**PARISIAN, Inc., v. COMMISSIONER OF INTERNAL REVENUE.**

**No. 10361.**

Circuit Court of Appeals, Fifth Circuit.

Nov. 10, 1942.

Benj. Leader, John D. Hill, and Samuel Tenenbaum, all of Birmingham, Ala., for petitioner.

J. P. Wenchel, Chief Counsel, and Claude R. Marshall, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, Helen R. Carloss, and Willard H. Pedrick, Sp. Assts. to Atty. Gen., for respondent.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

What is in question here is whether payments made as dividends on preferred stock were in fact dividends or were interest paid on indebtedness within and therefore deductible under Section 23 (b), Revenue Act of 1938, 26 U.S.C.A. Int. Rev.Code, § 23(b). The Board thought the obligations were, as they purported to be, certificates of stock, and the payments were, as they purported to be, and were treated as, dividends on stock. It sustained the commissioner's determination. The taxpayer has appealed. Both taxpayer and commissioner recognize as correct, indeed they both invoke, the rule laid down in the South Georgia case, United States v. South Georgia Ry. Co., 5 Cir., 107 F.2d 3, at page 6, that while in each case the form the obligations and payments take has significance, it is not controlling, and "that the question for decision in each case is, not what the payments are called, but what in fact, they are, and that if taken as a whole, the evidence shows a relation of debtor and creditor, the payments made on account of that relation, will be interest, no matter how called, while if taken as a

whole, the evidence shows a stockholding relation, the payments made will be dividends, equally no matter how called". Each cites and relies on cases decided by the Board and by this and other courts in which the rule has been applied to particular facts with results varying, not merely with the varying facts, but sometimes, it would seem, with the varying tribunals. It would serve no useful purpose to analyze all these varying cases or to attempt their application here. Two cases from our court will suffice. In the South Georgia case we found that moneys paid as dividends on preferred stock were in fact dividends on preferred stock and not interest and therefore not deductible as interest paid. In Commissioner v. J. N. Bray Co., 5 Cir., 126 F.2d 612, we found that moneys paid as dividends on "debenture preferred stock" were in fact intended to be, and were paid as, interest and were deductible as interest paid. We held the payments to be dividends in the South Georgia case because in form they were such, and while the certificates contained provisions usual in preferred certificates, accumulating the dividends and giving preferred shareholders the right to take measures to protect their rights as holders of preferred stock, extending if necessary to liquidating the company, there was an entire absence of the most significant, if not the most essential, feature of a debtor and creditor, as opposed to a stockholder relationship, the existence of a fixed maturity for the principal sum with the right to force payment of the sum as a debt in the event of default. In the Bray case, we held that the payments, though in form dividends, were in fact interest because the certificates contained a provision, not only for a fixed maturity with the right to sue on the certificates after one year's default, but for an acceleration of maturity with the right to sue in case four consecutive semi-annual interest payments were defaulted. Petitioner seeks to spell out of its certificate and its facts, provisions and facts similar to those in the Bray case. The Commissioner insists that the South Georgia case applies. We agree with the Commissioner. Neither the certificate itself nor the amendment to the certificate of incorporation of the company, under which the Class A Preferred Stock was issued, supports the view that the certificates had a fixed maturity with a right of action as for a debt upon default. Indeed, the amendment to the certificate was carefully prepared to avoid such a conclusion. For while the agreement between the bank and the incorporators of the original and the new corporation does provide that the certificates of stock shall provide that the stock shall be retired at a certain rate, the certificate of incorporation merely provides that "it shall be the duty of the corporation to redeem and retire, etc.", and the only provision for the enforcement of this duty is the usual provision authorizing preferred shareholders to take charge of the company and elect a Board of Directors. Extremely difficult as it would be to spell out of the agreement itself with its use of the peremptory word "shall" any provision for fixed maturity and right of action to collect the amount due as a debt, it is impossible to spell it out of the terms of the preferred certificates and the amendment to the certificate of incorporation under which they were issued. But this is not all. When it is considered that the bank, at the time of the bankruptcy of the first corporation, had a debt for $115,000 secured only by assets which at a fair value, as found by the referee, were worth only $36,500, it is quite clear that the plan of incorporation of the new company with its Class A & B Preferred and its Common stock did not contemplate that the bank should be a creditor to the extent of $115,000 with fixed maturities and the right to sue. It rather contemplated that the bank should be a joint venturer to the extent of getting its money back as a preferred stockholder and out of the earnings of the company. Nothing in the provision for the payment of dividends on, and the retirement of, the preferred stock at the rate of 10 percent annually beginning after the fifth year, at all supports the view that the obligation, in form a stock certificate, was any other than what it purported to be. Nothing in the evidence outside of the certificate supports the view that the parties intended it to be a debt. Indeed, it is stipulated; that the bank, at all times in its books of account and in its Federal tax returns for all years in which such payments were made, has treated the payments made by petitioner as dividends and the certificates as shares of stock; and that the petitioner for a number of years treated the payments as dividends paid by it, and has treated, and continues to treat, the shares as a part of its capital structure. It is true enough, as petitioner insists, that the form of an obligation is not controlling upon whether it is really a debt or a

stock interest, but it is certainly strongly persuasive, and when, as here, in actual practice, no challenge has been made of the form as representing anything but the fact, a petitioner who, in order to obtain a tax benefit by denying it, seeks to deny reality to that form must come with convincing evidence that the obligation is something other than it appears to be. Petitioner has not sustained this burden. On the contrary, the proof taken as a whole admits of no other conclusion than the one the Board came to, that the obligations were truly stock obligations and the payments were truly dividends.

The judgment is affirmed.