## FIRST MORTGAGE CORPORATION OF PHILADELPHIA v. COMMISSIONER OF INTERNAL REVENUE.

### No. 8108.

Circuit Court of Appeals, Third Circuit.

Argued Nov. 19, 1942.

Decided April 20, 1943.

Sanford D. Beecher, of Philadelphia, Pa. (Duane Morris & Heckscher, of Philadelphia, Pa., on the brief), for petitioner.

Muriel Paul, of Washington, D. C. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key, and J. Louis Monarch, Sp. Assts. to the Atty. Gen., on the brief), for respondent.

Before BIGGS, MARIS, and GOODRICH, Circuit Judges.

MARIS, Circuit Judge.

This is a petition to review a decision of the Board of Tax Appeals. First Mortgage Corporation of Philadelphia, the petitioner, claimed deductions in its income tax returns for the years 1936 and 1937 for payments made to its preferred stockholders in those years. It claimed these payments to be interest upon its indebtedness and deductible as such by virtue of section 23(b) of the Revenue Act of 1936, 26 U.S. C.A. Int.Rev.Code, § 23(b),[1] and Treasury Regulation 94 promulgated thereunder.[2]

The Commissioner of Internal Revenue determined that the payments were for dividends and not interest on the petitioner's indebtedness and assessed deficiencies in the tax returns for both years. The Board of Tax Appeals affirmed this determination.

The facts, as found by the Board, are as follows:

"The petitioner is a Pennsylvania corporation organized in January 1935 and filed its income tax returns for the years here involved with the collector of internal revenue for the First District of Pennsylvania.

"In December 1933 the First Mortgage Company of Philadelphia, hereinafter called 'the Company', engaged in the business of servicing mortgages and real estate in and near Philadelphia, Pennsylvania, was placed in receivership by a decree of the United States District Court for the Eastern District of Pennsylvania. More than 80 per cent of the business of the Company, both before and after receivership, was derived from business done for the Metropolitan Life Insurance Company, hereinafter called 'Metropolitan', in servicing its mortgages in the Philadelphia district, these averaging about $40,000,000. This business for Metropolitan was considered as under the control of William A. Clarke, a director, officer and principal stockholder of the Company, with whom one Philip W. Kniskern was associated.

"Included among the assets of the Company were certain securities, largely mortgage investments, having a book value of $368,431.35, which the receivers reasonably believed could then be liquidated only at a cash price substantially less than their fair market value. It was thought, however, that the liquidating value of these securities would be considerably increased if the liquidation were extended over a period of years. Faced with this situation, the receivers on September 13, 1934, entered into a tentative agreement with the aforesaid Clarke and Kniskern, subject to the approval of the Court, by which it was provided that the above mentioned assets of the receivership be sold to the petitioner, a new corporation to be formed by Clarke and Kniskern, in consideration of the issue to the receivers of all of the preferred stock of the petitioner of an aggregate par value of $250,000. No par value common stock of petitioner, having a stated value of $2,000, was to be issued to Clarke and Kniskern for $2,000 cash.

"Pursuant to the aforesaid agreement, the receivers filed a petition with the federal District Court for approval of the agreement and leave to sell the assets. A Special Master was thereupon appointed by the Court who in reporting on the matter made an adverse recommendation on the

---

[1] DEDUCTIONS FROM GROSS INCOME

"In computing net income there shall be allowed as deductions:

\* \* \* \* \*

(b) Interest. All interest paid or accrued within the taxable year on indebtedness, except on indebtedness incurred or continued to purchase or carry obligations (other than obligations of the United States issued after September 24, 1917, and originally subscribed for by the taxpayer) the interest upon which is wholly exempt from the taxes imposed by this title."

[2] "Art. 23(b)-1. Interest.—Interest paid or accrued within the year on indebtedness may be deducted from gross income,

\* \* \*

\* \* \* \* \*

"\* \* \* So-called interest on preferred stock, which is in reality a dividend thereon, cannot be deducted in computing net income \* \* \*."

ground that the hazard to the creditors of the Company in receivership from the contemplated sale was too great. Thereafter Metropolitan notified the receivers of its intention to terminate its contract for the servicing of its mortgages and stated its intention to enter into a new contract for that service with the new corporation, petitioner, to be formed by Clarke and Kniskern. Metropolitan, however, objected to the issuance of debenture certificates of the petitioner to the receivership in exchange for its assets because the relationship thus created between the petitioner and the receivers might endanger the position of Metropolitan in connection with the collections which would be made by the petitioner for Metropolitan, which would amount to twenty-five or thirty thousand dollars monthly.

"The receivers thereupon entered into a supplemental agreement with Clarke and Kniskern on November 30, 1934, which made provision for (a) a voting trust of all of the common stock to be issued to Clarke and Kniskern or their nominees, with a local bank as voting trustee, providing for the election of all three receivers, in their individual capacities, as directors of the new corporation together with Clarke and Kniskern; the trust to remain in effect until not more than 500 shares of the so-called 'preferred stock' remained outstanding or until none of such stock was held other than by Metropolitan; (b) the mortgages and other assets were not to be transferred to the new corporation (petitioner) until the receivers had inspected and approved the proposed mortgage servicing agreement between Metropolitan and the new corporation; (c) so long as the Metropolitan contract remained in effect, the directors, as such, were to exercise their judgment in the best interests of the new corporation, but in the event of termination of the Metropolitan contract for any cause, they were to exercise their judgment in the interests of the preferred and common stockholders.

"The Special Master thereupon reconsidered the matter and filed a supplemental report recommending the granting of an order for leave to sell the aforementioned assets and approval of the agreement. The District Court approved this report. The agreements between petitioner and the receivers were then executed and the assets transferred to petitioner which issued to the receivers in exchange its preferred stock in an aggregate stated value of $250,000.

Petitioner also then issued 100 shares of its no par common stock to Clarke and Kniskern, or their nominees, for $2,000 cash. The new contract with Metropolitan was executed and a voting trust of all the common stock was set up and brought into operation.

"By petitioner's articles of incorporation endorsed on its preferred stock certificates, it was provided in substance that so long as any preferred shares were outstanding, petitioner would retire them at the rate of not less than $7,500 every six months, plus an amount equal to the saving in dividends by reason of previous retirements, whether or not that sum was earned. The fixed dividend of $4 per share for the first year and $5 per share for each year thereafter was provided to be preferred and cumulative, currently payable out of earnings, and only after declaration by the directors of petitioner. Upon retirement of any of the preferred stock, all dividends accrued and unpaid thereon to that date were payable in any event. In liquidation or dissolution, it was provided that the preferred shareholders were entitled to priority over common stockholders to the extent of $100 for each share of preferred stock, plus the cumulative dividends accrued and unpaid to that date. In the event of default of dividends or sinking fund payments, preferred stockholders, otherwise barred from voting, would become entitled to vote, to the exclusion of the holders of common stock. It was provided that no mortgage except a purchase money mortgage could be placed on any property of the petitioner. It could assume no other obligation except current short-term ones, nor could it issue any bonds or shares of stock with rights equal or superior to the preferred stock, so long as any of the latter remained outstanding.

"All dividends paid by petitioner on its preferred stock were declared and authorized to be paid by appropriate action of the Board of Directors of the petitioner. Upon such authorization, petitioner in the year 1936 paid $16,374.32 and during the year 1937 it paid $16,474.02 as dividends on such stock."

■ Whether the Commissioner and the Board erred, as contended by the petitioner, is dependent upon whether the holders of the preferred stock were in fact creditors of the petitioner. The nomenclature used by the parties is not conclusive. This is necessarily so where the taxpayer seeks

a tax advantage by reason of terminology selected by itself to describe its relationship and obligation.[3] Such a rule, however, does not preclude a court which seeks to determine the real nature of the relationship from resorting to what the parties said in creating that relationship. We find that in both the agreement and the supplemental agreement the parties consistently spoke of "preferred stock" and of the payments to be made thereon as "dividends". The petitioner's articles of incorporation provided for preferred stock and the certificates which were issued were for shares of preferred stock with the right to cumulative dividends. In the receivers' prayer for leave to transfer the assets the proposed transfer was referred to as a sale and not as a loan. The court's order allowing the prayer of the petition directed a sale. The petitioner's books reflect the outstanding preferred stock as part of the capital structure and not as a liability. There is not a scintilla of evidence, so far as nomenclature is concerned, to indicate that the parties were dealing with any relationship other than that which a stockholder bears to his corporation or that the payments were other than for dividends.

■ The intention of the parties likewise serves as an aid in construction. In dealing with this phase it cannot be too much stressed that the receivers, acting on behalf of the company, and Clarke and Kniskern, acting on behalf of the petitioner, then about to be formed, were anxious to retain the business of Metropolitan. The Special Master found that this business was essential and withheld his approval until Metropolitan expressed itself as ready to enter into a formal contract with the petitioner for the servicing of its mortgages. As a practical matter it would have been absurd for Metropolitan to have entrusted monthly collections of thirty thousand dollars to a corporation having a cash capitalization of but $2,000 as compared to an indebtedness of $250,-000. Metropolitan gave its business to the petitioner with the assurance that the receivers were to receive preferred stock and not evidences of indebtedness. Even under such assurances it insisted upon additional safeguards by the creation of a voting trust as to the common stock before it agreed to enter into a contract with the petitioner.

It is undisputed that the intention of the receivers and of Clarke and Kniskern was to evolve a method for the gradual liquidation of the assets which was believed to be financially desirable for the company. It is clear that no method would be workable unless it met with the approval of Metropolitan and that no proposed method which would give the receivers equal rights with those of Metropolitan in the assets of the petitioner, such as would have been the situation if the receivers were given the status of creditors, would have been approved by Metropolitan.

■ Allowance of deductions "depends upon legislative grace; and only as there is clear provision therefor can any particular deduction be allowed."[4] The petitioner, therefore, has the burden of proving its claim that its relationship to the holders of the preferred stock was that of debtor and creditor and that the payments made by it to such preferred stockholders were for interest upon an indebtedness. That burden the petitioner has not met. Even a cursory examination of the rights accruing to the preferred stockholders discloses that several very important characteristics of a creditor-debtor relationship are missing. For example, the preferred stock has no fixed or determinable maturity date at which time the holders may legally enforce payment of the principal and accumulated dividends if the petitioner is in default.[5] It is true that a sinking fund for the redemption and retirement of the preferred stock is provided for and that at least $7,500 per annum is required to be paid into it annually regardless of earnings. However, the sole remedy given to the preferred stockholders upon default is the right to vote to the exclusion of the common stockholders. This is a stockholder's and not a creditor's remedy.

■ A fixed rate of interest payable even in the absence of profits is a normal characteristic of a debt.[6] Although the rate of dividends upon the petitioner's preferred stock is fixed, payment of the divi-

[3] Brown-Rogers-Dixson Co. v. Commissioner of Int. Rev., 4 Cir., 1941, 122 F. 2d 347.

[4] New Colonial Co. v. Helvering, 1934, 292 U.S. 435, 440, 54 S.Ct. 788, 790, 78 L. Ed. 1348; Deputy v. Du Pont, 1940, 308 U.S. 488, 493, 60 S.Ct. 363, 84 L.Ed. 416.

[5] United States v. South Georgia Ry. Co., 5 Cir., 1939, 107 F.2d 3.

[6] Finance & Investment Corporation v. Burnet, 1932, 61 App.D.C. 78, 57 F.2d 444.

dends may be made only if and when declared by the petitioner's board of directors. Then again it is normally an attribute of a creditor relationship that in the event of dissolution or liquidation creditors share in the assets before stockholders.[7] The only priority given the holders of the preferred stock is that they be paid before the holders of shares of any other class of stock. Redemption is at the petitioner's option, again an indicia of a stockholder rather than a creditor relationship.[8]

We conclude that the petitioner has not brought itself within the terms of section 23(b) and is, therefore, not entitled to the claimed deduction.[9]

The decision of the Board of Tax Appeals is affirmed.

---

[7] Warren v. King, 1882, 108 U.S. 389, 398, 399, 2 S.Ct. 789, 27 L.Ed. 769.

[8] Jewel Tea Co. v. United States, 2 Cir., 1937, 90 F.2d 451, 112 A.L.R. 182.

[9] For comparative study only reference might be made to Parisian, Inc., v. Commissioner of Internal Revenue, 5 Cir., 1942, 131 F.2d 394; Pacific Southwest R. Co. v. Commissioner of Internal Rev., 9 Cir., 1942, 128 F.2d 815; Brown-Rogers-Dixson Co. v. Commissioner of Int. Rev., 4 Cir., 1942, 122 F.2d 347; United States v. South Georgia Ry. Co., 5 Cir., 1939, 107 F.2d 3, and Finance & Investment Corporation v. Burnet, 1932, 61 App. D.C. 78, 57 F.2d 444, in which the payments were held to be dividends and not interest in contrast to Commissioner of Internal Revenue v. O.P.P. Holding Corp., 2 Cir., 1935, 76 F.2d 11, and Commissioner of Internal Revenue v. Proctor Shop, 9 Cir., 1936, 82 F.2d 792, in which the payments were held to be interest and not dividends.