WETTERAU GROCER CO., Inc. v. COMMISSIONER OF INTERNAL REVENUE.

No. 14010.

United States Court of Appeals Eighth Circuit.

Jan. 17, 1950.

John V. Lee, St. Louis, Mo. (Messrs. Lee, Fricke & Lee, St. Louis, Mo., were with him on the brief), for petitioner.

Harry Marselli, Special Assistant to The Attorney General (Theron Lamar Caudle, Assistant Attorney General, Ellis N. Slack, A. F. Prescott and Virginia H. Adams, Special Assistants to the Attorney General, were on the brief), for respondent.

Before GARDNER, Chief Judge, and WOODROUGH and THOMAS, Circuit Judges.

GARDNER, Chief Judge.

This matter is before us on petition to review a decision of the Tax Court which sustained the Commissioner in his determination of a deficiency in taxpayer's income for the years 1943 and 1944 in the amount of $6200.40.

Taxpayer is a corporation organized under the laws of the State of Missouri, where it is engaged in the wholesale grocery business. Its stock has at all times been closely held by the members of the Wetterau family. In 1924 it paid a stock dividend to its common stockholders in the form of 500 shares of preferred stock having a par value of $100.00 a share. On March 31, 1939, at a special stockholder's meeting, at which all the stockholders including those holding the outstanding preferred stock of the company were present in person, a plan was unanimously adopted authorizing the company to issue an aggregate of $100,000.00 in Series A, one to seven per cent, fifty year debenture notes, the rate of interest to be at the discretion of the directors according to earnings payable on the 30th day of June and the 31st day of December in each year, "to be subordinate to the claims of general creditors, but superior to the claims of stockholders, callable at par, with accrued interest, after five years, on any interest date, upon thirty days' written notice, the notes not to be sold or assigned by the holders without notice to the company and ample opportunity to redeem and to exchange the outstanding preferred stock for a like amount of said notes." Pursuant to the action taken, notes in the amount of $50,000.00 were issued and were exchanged for the entire outstanding preferred stock. At the same meeting of stockholders it was resolved that "the outstanding preferred stock of the company be retired as of March 31st, 1939, with interest adjusted from January 1st, 1939, by exchanging therefor a like amount of Series A debenture notes, with the consent of the preferred stockholders * * *." The stockholders also authorized the issuance of certain Series B five year debenture notes but as they are not here involved no further reference need be made to them. The $50,000.00 authorized balance of Series A debenture notes has never been issued. During each of the years 1943 and 1944 the Board of Directors voted to pay seven per cent on these outstanding $50,000.00 Series A debenture notes and payment was accordingly so made. The taxpayer deducted the amount of the interest so paid for the years 1943 and 1944. The Commissioner disallowed the item as a deductible expense and the Tax Court sustained the Commissioner and from its decision taxpayer petitions for review.

The issue is a very narrow one and may be stated as follows: whether the amount paid by the taxpayer during

the years 1943 and 1944 to the holders of the debenture notes constituted dividends or constituted interest paid and hence deductible under Section 23(b) of the Internal Revenue Code, 26 U.S.C.A. § 23(b). No all-comprehensive rule has as yet been established governing all conceivable situations but each case must turn on its own particular facts. Helvering v. Richmond F. & P. R. Co., 4 Cir., 90 F.2d 971. Deductions are a matter of legislative grace allowable only where there is clear provision therefor and it is incumbent upon the taxpayer to establish by a preponderance of the evidence that the holders of these Series A notes were creditors and that the payment made by the taxpayer was in fact interest upon an indebtedness. Interest, within the meaning of Section 23(b) has been defined as "the amount which one has contracted to pay for the use of borrowed money." Deputy, Admx. v. DuPont, 308 U.S. 488, 60 S.Ct. 363, 368, 84 L.Ed. 416; Equitable Life Assur. Society v. Commissioner, 321 U.S. 560, 64 S.Ct. 722, 88 L.Ed. 927. These notes were not issued for borrowed money. They represented no new contribution to capital. They were exchanged for outstanding preferred stock which had been issued as a stock dividend to the common stockholders. The holders of these notes were the common stockholders and these notes simply supplanted the outstanding preferred stock. There is no apparent business advantage to the taxpayer unless by this transaction it will be enabled to deduct as a necessary expense the amount paid as interest on these notes. Had the amount been paid as dividends on the preferred stock, confessedly no deduction could be had.

It is to be noted that the payment of interest was at the discretion of the directors and dependent upon the company's earnings. This is not a characteristic of an interest obligation but is a characteristic of the duty to pay dividends. The amount of interest is not fixed by the note except that a maximum amount is fixed and the notes, like preferred stock, were subordinate to the claims of general creditors. The amount of the payment of so-called interest is not definite but dependent upon

the net earnings. The attribute of a creditor relationship—the right to share on an equal basis with other creditors of the same class—is wanting. It is to be noted too that the notes were not negotiable; in fact, they could be transferred only upon giving written notice and upon first giving an opportunity to the taxpayer to redeem the notes. The notes had practically all the characteristics of the preferred stock which they supplanted.

In these tax matters substance rather than form must be regarded and we agree with the Tax Court that these payments had the attributes of dividends rather than of interest and its decision is therefore affirmed.