CRAWFORD DRUG STORES, Inc.,
Appellant,

v.

UNITED STATES of America,
Appellee.

No. 4975.

United States Court of Appeals,
Tenth Circuit.

March 15, 1955.

Henry L. Fist, Tulsa, Okl. (C. H. Rosenstein, Tulsa, Okl., was with him on the brief), for appellant.

Dudley J. Godfrey, Jr., Washington, D. C. (H. Brian Holland, Asst. Atty. Gen., Ellis N. Slack, Robert N. Anderson, Edmund C. Grainger, Jr., Sp. Assts. to the Atty. Gen., and B. Hayden Crawford, U. S. Atty., Tulsa, Okl., were with him on the brief), for appellee.

Before PHILLIPS, Chief Judge, BRATTON, Circuit Judge, and VAUGHT, District Judge.

BRATTON, Circuit Judge.

The question presented for determination is whether certain sums paid by Crawford Drug Stores, Inc., constituted payment of dividends within the purview of section 115(a) of the Internal Revenue Code, 26 U.S.C.A. § 115(a), or payment of interest within the meaning of section 23(b) of such Code, 26 U.S.C.A. § 23(b). If the former, they were not deductible in computing net income. If the latter, they were deductible.

Crawford Drug Stores, Inc., is a corporation organized under the laws of

Oklahoma. Prior to July 7, 1945, it had issued and outstanding 500 shares of common stock of the par value of $100 per share. At a special meeting of the stockholders held on July 7, 1945, a resolution was adopted increasing the capital stock of the corporation to $100,000, divided into 500 shares of preferred stock of the par value of $100 each, and 500 shares of common stock of the par value of $100 each. The action of the stockholders was set up on the books of the corporation as preferred stock authorized on the credit side and as preferred stock unissued on the debit side. A certificate of "Increase of Capital Stock" was filed in the office of the Secretary of State of Oklahoma. It was stated in the certificate that the capital stock, as increased, was $100,000, divided into 500 shares of preferred and 500 shares of common stock, each of the par value of $100. And annual franchise tax returns for the fiscal years 1947 and 1948 were filed with the State of Oklahoma in which it was reported that the outstanding capital stock of the corporation consisted of shares of common and first preferred stock. The certificates of shares issued pursuant to the action of the stockholders certified that the person named therein was the owner of the specified number of fully-paid and non-assessable shares of the preferred capital stock, transferable only on the books of the corporation by such owner in person or by his duly authorized attorney, upon surrender of the certificate properly endorsed. The certificates further certified that the total capital stock of the corporation was $100,000, divided into $50,000 of preferred stock and $50,000 of common stock, as provided in the articles of incorporation of the corporation. And they further certified that a statement of all the designations, preferences, privileges, and voting powers or restrictions or qualifications of the shares of preferred stock which the corporation was authorized to issue appeared on the back thereof. On the reverse side of the certificates, it was stated that the preferred stock was entitled to preference and priority over any subsequent issue of preferred stock and over the common stock to receive cumulative dividends of five per cent per annum; that upon dissolution of the corporation, after payment of all debts, the assets should be first applied to the payment of preferred stock at par with any unpaid accumulations thereon before any payment was made to the holders of any subsequent preferred stock or of common stock; that the corporation should not without the consent in writing of the stockholders of record of at least fifty-one per cent in amount of the outstanding preferred stock increase the amount of the preferred stock, change any voting powers of any class of capital stock, or create any issue of stock prior to or on a parity with the preferred stock; that the holders of the preferred stock should be entitled to receive dividends at the rate of five per cent per annum, payable semi-annually; that such dividends should be cumulative and should be payable out of the net earnings of the corporation so long as such preferred stock was outstanding; that the preferred stock was absolutely and unequivocably payable on July 15, 1965; that if the holder of any certificate thereof was not paid on such date, he should have the right to require the dissolution of the corporation and the application of its assets to the liabilities and thereafter to the preferred stock to the extent of par value thereof plus any accumulation of unpaid dividends thereon; and that in the event of dissolution, bankruptcy, or termination of the corporation, the par value of the preferred stock and all cumulative interest thereon should be paid in full before the common stock or any part thereof or any dividend thereon was paid. Shortly after the meeting of the stockholders, 300 shares of the authorized preferred stock were issued; and about six months later, the remaining 200 shares were issued. The three persons to whom such shares were issued owned common stock in the corporation. At the time of the meeting of the stockholders, the corporation was in need of $50,000 additional operating cap-

ital. It was originally felt that the owners of common stock should make a direct loan to the corporation and take its notes therefor. In the course of the discussion at the meeting it was felt that the making of a direct loan and the taking of notes therefor would have the effect of weakening the credit of the corporation by increasing its current liabilities. Thereupon it was proposed that the parties advance to the corporation the necessary funds and accept as evidence thereof debentures of preferred stock. And the resolution authorizing an increase in the capital of the corporation was adopted under such circumstances.

In 1947, the corporation made payment of certain sums to the holders of the preferred stock. The payment constituted payment of dividends or of interest, depending upon whether the certificates were shares of preferred stock or evidence of indebtedness. A like payment was made in 1948. In its income tax returns for such years, the corporation did not claim any deduction for such payments. Thereafter, claims for refund were seasonably filed. The claims in presently pertinent part were predicated upon the asserted contention that the shares of preferred stock were only debentures or promissory notes and that the two sums paid to the holders thereof constituted payments of interest which was deductible under section 23(b), supra. The claims for refund were disallowed. The corporation instituted this action against the United States to recover such refunds. Concluding that the case disclosed more indicia of a stockholder relationship than of a debtor-creditor relationship, and that the payments made to the holders of the certificates of preferred shares were in fact dividend payments rather than interest, the court entered judgment for the United States. The taxpayer appealed.

■■ No all-comprehensive rule has been evolved and accepted for ready use in determining in all cases whether a payment of the kind here in question constitutes payment of a dividend on stock or interest on indebtedness. Precedents abound. But because of the widely varying facts underlying the conclusions reached they do not provide a ready test. No single characteristic is necessarily decisive in all cases. The basic question whether the payees are stockholders or creditors and whether the payments constitute dividends or interest turns upon the consideration of all the relevant facts. John Kelly Co. v. Commissioner, 326 U.S. 521, 66 S.Ct. 299, 90 L.Ed. 278; Bowersock Mills & Power Co. v. Commissioner, 10 Cir., 172 F.2d 904; Commissioner of Internal Revenue v. O. P. P. Holding Corp., 2 Cir., 76 F.2d 11; Wetterau Grocer Co. v. Commissioner, 8 Cir., 179 F.2d 158. But in distinguishing between payment of dividends on stock and payment of interest on indebtedness, the determining elements usually recognized for appropriate consideration are the name given to the certificates, the presence or absence of a maturity date, the source of the payments, the status of the holders in respect to being equal or inferior to that of regular corporate creditors, and the intention of the parties.

■ These certificates were styled and repeatedly referred to throughout as preferred stock. The name given to securities is not conclusive in respect to their nature. Certificates called one name may have the predominating characteristics of the other. Jewel Tea Co. v. United States, 2 Cir., 90 F.2d 451, 112 A.L.R. 182; Commissioner of Internal Revenue v. Schmoll Fils Associated, 2 Cir., 110 F.2d 611. But the nomenclature used by the parties is a factor not to be ignored. Commissioner of Internal Revenue v. O. P. P. Holding Corp., supra; First Mortgage Corporation of Philadelphia v. Commissioner, 3 Cir., 135 F.2d 121; John Wanamaker Philadelphia v. Commissioner, 3 Cir., 139 F.2d 644. These certificates had a definite maturity date. And the presence of a definite maturity date in such certificates is an important factor indicating that they represent indebtedness as distinguished from preferred stock. Bowersock Mills & Power Co. v. Commissioner,

supra. But a provision of that kind is not conclusive. Pacific Southwest Realty Co. v. Commissioner, 9 Cir., 128 F.2d 815, certiorari denied 317 U.S. 663, 63 S.Ct. 64, 87 L.Ed. 533; Commissioner of Internal Revenue v. Meridian & Thirteenth Realty Co., 7 Cir., 132 F.2d 182. The annual payments to the holders of the certificates were to be made only out of net earnings. That provision has pertinence because it is a common attribute of a debt that the holder thereof is entitled to interest thereon even though there are no net earnings. But in ordinary circumstances the holder of preferred stock has no such absolute right to the payment of dividends. Commissioner of Internal Revenue v. Meridian & Thirteenth Realty Co., supra; First Mortgage Corporation of Philadelphia v. Commissioner, supra. The certificates provided in effect that in the event of dissolution or liquidation the rights of the holders thereof should be subordinate to the rights of general corporate creditors. That provision has significance because it is normally an attribute of a creditor relationship that in the event of dissolution or liquidation creditors share in the assets before stockholders, while the only right given the holders of preferred stock is that they be paid before the holders of any other class of stock are paid. First Mortgage Corporation of Philadelphia v. Commissioner, supra; John Wanamaker Philadelphia v. Commissioner, supra.

■ In respect to the intention of the parties, the taxpayer relies heavily upon certain affidavits filed in the case and a stipulation that if the affiants were present they would testify to the facts stated in the affidavits. It was stated in the affidavits that at the meeting of the stockholders the certificates were considered wholly in the nature of a loan designed to obtain necessary working capital over a twenty-year period, reserving in the corporation the right to repay the loan at any time. Standing alone, the testimony is persuasive that the sums paid to the holders of the certificates represented payment of interest on indebtedness; and the intent of the parties in the establishment of the relationship is a factor of importance. Commissioner of Internal Revenue v. Meridian & Thirteenth Realty Co., supra; First Mortgage Corporation of Philadelphia v. Commissioner, supra. But the evidence is overborne by the action of the corporation in denominating the certificates as preferred stock, the action of the corporation in providing that the annual payments should be made only out of net earnings, the action of the corporation in providing that on dissolution or liquidation of the corporation the rights of the holders of the certificates should be subordinate to the rights of ordinary corporate creditors, the action of the corporation in setting up the transaction on the books as preferred stock, the action of the corporation in filing with the Secretary of State the certificate in which it was certified that the capital stock of the corporation consisted of common and preferred stock, and the action of the corporation in filing with the State of Oklahoma the annual franchise returns in which it was reported that the outstanding capital stock of the corporation consisted of shares of common and first preferred stock.

■ Manifestly, the several pertinent elements present in the case give rise to conflicting inferences. But when they are added and weighed, we share with the trial court the view that the payments made to the holders of the certificates represented payment of dividends upon shares of preferred stock and therefore were not deductible in computing net income.

This conclusion is not in conflict with Bowersock Mills & Power Co. v. Commissioner, supra, on which the taxpayer places strong reliance. That case was clearly different from this one. There the corporation had issued and outstanding certain first mortgage bonds. The bonds were secured by a first deed of trust on the assets of the corporation. The bonds were held by Bowersock Trust. Two contracts were executed. One was between the trust and the corporation. It provided that the corporation should amend its charter to author-

ize the issuance of 6,000 shares of preferred stock, to be issued to the trust in payment of the bonds. The second contract was between the trust and the common stockholders of the corporation. It provided that the trust would sell and the stockholders would purchase the preferred stock at $90 per share. Laying emphasis upon the fact that prior to the transactions the parties stood on the basis of debtor and creditor, with no disposition on the part of the creditor to become an investor in the corporation, it was held that the amounts which the corporation paid to the holders of the certificates of preferred stock constituted payment of interest on indebtedness and therefore was deductible in computing net income. No comparable factual situation is presented here. Prior to the issuance of the certificates of preferred stock, there was no debtor-creditor relationship between this corporation and the purchasers of the certificates. On the contrary, prior to the issuance of such certificates the individuals to whom such certificates were issued owned shares of common stock of the corporation.

The judgment is affirmed.