OPINION This case offers for our determination the familiar issue of whether ostensible dividend payments on preferred stock are, in reality, interest on indebtedness. We are, however, presented with a slightly different twist to the usual factual pattern in that the petitioners here are contending for an equity rather than a debt classification in order to qualify for the 85-percent dividends-received deduction prescribed in section 243(a) (l),[3] I.R.C. 1954.[4] Of course this twist in no way alters the applicable legal principles. Accordingly, we note ab initio that the dividends received deduction, just as other tax deductions bestowed by Congress, exists solely as a matter of legislative grace. It is therefore incumbent upon the petitioners herein to show that the payments in issue are dividends in substance as well as in form. Wetterau Grocer Co. v. Commissioner, 179 F. 2d 158, 160 (C.A. 8, 1950), affirming a Memorandum Opinion of this Court; John Wanamaker Philadelphia v. Commissioner, 139 F. 2d 644, 646 (C.A. 3, 1943), affirming 1 T.C. 937 (1943). Although the terms “dividends” and “interest,” “stocks” and “bonds” are often used and once had readily discernible boundaries, the provisions of modem security instrumente have blurred the traditional benchmarks that once served to distinguish equity capital from indebtedness. In addition, preferred stock by its very nature evidences some of the protective features customarily associated with a debt instrument. Commissioner v. Meridian & Thirteenth R. Co., 132 F. 2d 182, 186 (C.A. 7, 1942), reversing 44 B.T.A. 865 (1941); Charles L. Huisking & Co., 4 T.C. 595, 599 (1945). In charting these murky waters, the courts have mapped out numerous criteria of distinction to guide them in steering a true course. Such criteria are no more than helpful landmarks along the way. As the Supreme Court has said in considering this problem, “There is no one characteristic * * * which can be said to be decisive in the determination of whether the obligations are risk investments in the corporations or debts.” John Kelley Co. v. Commissioner, 326 U.S. 521, 530 (1946). The intent of the parties in creating the relationship with the corporation is a highly significant factor in deciding these questions. Gooding Amusement Co. v. Commissioner, 236 F. 2d 159, 166 (C.A. 6, 1956), affirming 23 T.C. 408 (1954), certiorari denied 352 U.S. 1031 (1957); United States v. Title Guarantee & Trust Co., 133 F. 2d 990, 993 (C.A. 6, 1943), and Commissioner v. Meridian & Thirteenth, R. Co., supra at 186. Lacking sorcery powers to divine the parties’ subjective intent, courts must always rely on the overt manifestations thereof, i.e., the parties’ acts. Verifine Dairy Products Corporation of Sheboygan, 3 T.C. 269, 276 (1944). The facts herein reveal that Malone & Hyde amended its corporate charter to authorize the issuance of the preferred stock and pursuant thereto issued preferred stock certificates to Eagland Investment and Dixie Investment. The latter two companies demanded and obtained the written opinion of counsel for Malone & Hyde that the preferred stock was validly issued. On their own behalf the two companies executed investment intent letters stating that the preferred stock was being acquired by them for investment purposes. The preferred stock dividend payments were periodically authorized by action of Malone & Hyde’s board of directors, were charged to surplus on its books, and were reported under the heading of “Dividends and other distributions” on Form 1099 information returns filed by Malone & Hyde with the Internal Revenue Service. During the years in issue, the parties consistently, and without exception, referred in a multiplicity of documents, such as the sales agreements, letter agreements, corporate charter amendment, stock certificates, annual reports to shareholders, and various other documents filed with the Securities and Exchange Commission, to the certificates involved as “preferred stock” and the payments with respect thereto as “dividends.” Throughout the period commencing with the issuance of the preferred stock and terminating with its redemption, all parties consistently treated the payments in issue as dividends on their tax returns. It was only after the preferred stock was redeemed that Malone & Hyde decided to claim a deduction for interest and to file the requisite refund claims. While the foregoing factors showing consistent treatment by the parties may not be determinative I of the issue, they do, taken together, constitute highly significant evidence of an intention to create preferred stock. John Wanamaker Philadelphia v. Commissioner, supra at 646-647; Zilkha & Sons, Inc., 52 T.C. 607 (1969). A second important indicium of preferred stock is the provision in the charter amendment that dividends on the preferred stock are “payable quarterly out of the earnings of the corporation” (emphasis supplied). Crawford Drug Stores v. United States, 220 F. 2d 292, 296 (C.A. 10, 1955); Commissioner v. Meridian & Thirteenth R. Co., supra at 187; and Kingsmill Corporation, 28T.C. 380, 336-337 (1957). A requirement that corporate distributions be made only out of earnings is a traditional requirement for dividend payments. In contrast, a bondholder or other creditor normally has a legally enforceable right to the payment of interest irrespective of the availability of current or accumulated earnings. Thirdly, the charter amendment provides that in the event of the liquidation or dissolution of Malone & Hyde, the preferred shareholders take priority only over the holders of the common stock, and it follows that they are not entitled to share in the assets on a parity with secured and general creditors. This element is an indispensable feature of stock under Tennessee law.[5] Furthermore, this feature is clearly Characteristic of a stockholder relationship rather than the more secure position of a creditor. John Wanamaker Philadelphia v. Commissioner, supra at 647;[6] First Mortgage Corp. v. Commissioner, 135 F. 2d 121, 125 (C.A. 3, 1943); Affiliated Research, Inc. v. United States, 351 F. 2d 646, 649 (Ct. Cl. 1965). Finally, the preferred shareholders were represented from the outset by two members on Malone & Hyde’s board of directors. The conferral of a voice in corporate management without an operative "act of default with respect to the corporate instrument involved is representative of a stockholder status. Zilkha & Sons, Inc., supra; and Ernst Kern Co., 1 T.C. 249, 271 (1942). If we include the letter agreements between the majority stockholders of Malone & Hyde and the sellers 'as part of the controlling documents, the stock in issue does assume some of the characteristics of a “hybrid” security. These agreements provide that the majority shareholders agree to “take all actions within their power and authority” to cause Malone & Hyde to redeem the preferred stock within 4 years from issuance.[7] Kespondent urges that this, together with the other protective provisions contained in the letter agreements, amounts to a guarantee of redemption at a fixed maturity date. A fixed maturity date is, of course, a usual provision in a debt instrument. However, we note tliat redemption of the preferred stock is contingent upon, among other things, the availability of corporate funds for this purpose, the retention of majority control, and continued willingness to redeem on the part of the signing shareholders. The fact that the parties saw fit to include in the charter amendment a provision for' the creation of a sinking fund at the beginning, of the fifth year after issuance would seem to indicate tacit recognition on their part that some contingency may well prevent redemption within the initial 4-year period. Moreover, we deem it significant that the corporation, as distinguished from some of its shareholders in their individual capacities, is not obligated to redeem the preferred stock. As was said in Northern Refrigerator Line, Inc., 1 T.C. 824, 829-880 (1943), in a similar situation wherein a third-party corporation guaranteed payment of dividends and ultimate redemption of certain preferred stock: Apparently its theory is that this contract gives to the preferred stockholders that security of payment at all events, without-regard to the existence or extent of a corporate surplus or earnings, Which is a feature of the debtor-creditor relationship. But that security of payment springs not from their relationship with petitioner, hut from the contract of guaranty executed, hy another corporation, the holder of the common stock. It is too well settled to require much emphasis here that a contract of guaranty is an undertaking separate and distinct from the principal obligation. The debtor is not a party to the guaranty, and the guarantor is not a party to the principal obligation, and there is no privity between them. * * * The right of the preferred stockholders to demand payment from petitioner upon maturity- is still dependent upon petitioner’s ability to pay without impairment of its capital. The fact that the 'Stockholders may then look to and enforce payment by another does not affect the character of their relationship with petitioner. [Emphasis added; citations omitted.] Clearly the failure to redeem here would not result in a cause of action against Malone & Hyde. In contrast, tbe bolder of a debt instrument normally bas prescribed remedies available to bim upon an act of default by tbe debtor. Parisian, Inc. v. Commissioner, 131 F. 2d 394 (C.A. 5, 1942), affirming a Memorandum Opinion of this Court. In any event, even assuming arguendo tbe existence of a fixed maturity date, that factor alone, while relevant, is not conclusive. Milwaukee & Suburban Transport Corporation v. Commissioner, 283 F. 2d 279, 282-283 (C.A. 7, 1960), affirming a Memorandum Opinion of this Court on this point, certiorari denied 368 U.S. 976 (1962); Charles L. Huisking & Co., supra at 599. One final consideration influences our decision. Prior to engaging in this transaction, the parties entered into protracted arm’s-length bargaining concerning the form the transaction should take with full awareness that a tax advantage to one would result in a concomitant tax disadvantage to the other. Of course, as respondent freely admits, the parties to the transaction were free to minimize their taxes within the framework of the law. Gregory v. Helvering, 293 U.S. 465 (1935), and Kraft Foods Co. v. Commissioner, 232 F. 2d 118, 127-128 (C.A. 2, 1956), reversing 21 T.C. 513 (1954). It is our view that, given a transaction where the contract is negotiated between parties with conflicting tax interests and where the resultant document sets forth duties and obligations which conform to the business or economic realities of the situation, this Court should not take upon itself the task of recasting the agreement. Bather, under such circumstances, we are inclined to leave the parties to live up to their own agreement. Therefore, having carefully weighed the foregoing factors, we conclude that the indicia of the preferred stock clearly predominate. Consequently, we hold that the petitioners are entitled to the 85-percent dividends-received deduction claimed by them for the taxable years in issue. Reviewed by the Court. Decisions will be entered for the petitioners. Hoyt, /., dissents. SEC. 243. DIVIDENDS RECEIVED BX CORPORATIONS. (a) General Rule. — In the case of a corporation, there shaU be allowed as a deduction an amount equal to the following percentages of the amount received as dividends from a domestic corporation which is subject to taxation under this chapter: (1) 85 percent, * * * AU statutory references are to the Internal Revenue Code of 1954 unless otherwise specified. Tenn. Code Ann. see. 48-203. Equality of no par shares — redemption provisions — preference in dividends and liquidation. — * * * any class or classes of stock may be preferred as to its or their distributive share or shares of the assets of the corporation upon dissolution ; but, in case of insolvency, the debts and other liabilities of the corporation shall be paid before any payment or distribution is made to the holders of any class of stock. * * * In John Wanamaher Philadelphia v. Commissioner, for example, the court said at p. 647 “the most significant characteristic of a creditor-debtor relationship — [is] the right to share with general creditors in the assets in the event of dissolution or liquidation.” With respect to the significance in these cases of a power to force redemption, we note the statement in H Fletcher, Cyclopedia Corporations, sec. 5310, that “As a rule, the stockholder’s right to compel a redemption is subordinate to the rights of creditors,” citing, among others, Schneider v. Mingenback, 139 F. 2d 86 (C.A. 10, 1943,), in support of said statement.