MOTEL CORPORATION, PETITIONER *v.* COMMISSIONER OF INTERNAL
REVENUE, RESPONDENT

Docket No. 1498–68.    Filed June 29, 1970.

*Jack White*, for the petitioner.
*James D. Burroughs*, for the respondent.

OPINION

## *Issue 1. Interest Deduction*

The petitioner contends that the advances in the amount of $170,000 made to it by Messrs. Ackerman and Traub in 1958 and 1959 were loans. Accordingly, it argues that payments made by it with respect to such advances in the tax years 1962 and 1963 are deductible as interest. On the other hand, the respondent contends that the advances were not loans but rather contributions to capital, and accordingly, payments made with respect to such advances were merely distributions with respect to stock and not deductible by the petitioner.

The fact that the advances were formally characterized as debt by the petitioner and Messrs. Ackerman and Traub is some evidence of their character, but is not decisive. Our inquiry must be into the true substantive nature of the advances, and the petitioner has the burden of proving that its treatment of the transaction is correct. *Wetterau Grocer Co.* v. *Commissioner*, 179 F. 2d 158 (C.A. 8, 1950), affirming a Memorandum Opinion of this Court; *Ambassador Apartments, Inc.*, 50 T.C. 236 (1968), affd. 406 F. 2d 288 (C.A. 2, 1969). It has failed to sustain such burden.

It has been stated that:

*The essential difference between a stockholder and a creditor is that the stockholder's intention is to embark upon the corporate adventure, taking the risks of loss attendant upon it, so that he may enjoy the chances of profit.* The creditor, on the other hand, does not intend to take such risks so far as they may be avoided, but merely to lend his capital to others who do intend to take them. [*United States* v. *Title Guarantee & Trust Co.*, 133 F. 2d 990, 993 (C.A. 6, 1943).]

Such evidence as is available to us clearly indicates that the advances were made with the intention of embarking on the corporate adventure and not of making a loan. See *Zilkha & Sons, Inc.*, 52 T.C. 607 (1969).

The prospects for the repayment of the advances were very much dependent on the success of the petitioner's venture. The evidence indicates that the intention of Messrs. Ackerman and Traub was to acquire a Holiday Inn franchise, construct a motel to operate such franchise, and then to sell both the motel and the franchise at a profit. Although Mr. Ackerman testified to the effect that the profitability of such a venture was assured, we think that the advances by him and Mr. Traub were placed at a substantial risk. Delays or unexpected increases in the cost of construction, decline in the tourist business, unavailability of a purchaser with sufficient capital to purchase the franchise and motel all might result in the petitioner's suffering a considerable loss at the time it was ready to sell the motel. With only $7,000 equity to support the advances of $170,000, losses on such advances could easily be sustained if the petitioner encountered any serious

financial problems or difficulty in finding a responsible purchaser. Although the petitioner did in fact realize a handsome profit, such success was not assured when it launched upon the venture in 1958.

Along with the substantial risk of loss incurred by Messrs. Ackerman and Traub in making the advances, they, as the shareholders of the petitioner, stood to increase substantially their profit on the venture in the event it was successful. Had the petitioner borrowed the additional $170,000 necessary for construction of the motel from a third party, it would have had to pay between 13- and 14-percent interest. The cost of borrowing the necessary funds at such high interest rates would have increased considerably the cost of constructing the motel. By personally borrowing $170,000 (presumably at 5½-percent interest) and advancing it to the petitioner, Messrs. Ackerman and Traub would realize a significantly greater profit on the sale.

Other factors indicating that the advances were in the nature of capital contributions rather than debt are: (1) The lack of a fixed maturity date in the purported debt instrument (*United States* v. *Title Guarantee & Trust Co.*, *supra; Parisian, Inc.* v. *Commissioner*, 131 F.2d 394 (C.A. 5, 1942), affirming a Memorandum Opinion of this Court) ; (2) the fact that the noteholders and the shareholders were the same persons, and, so far as we know, may have had identical interests (*Fin Hay Realty Co.* v. *United States*, 398 F.2d 694 (C.A. 3, 1968)) ; (3) the fact that the notes were not secured by property of the petitioner (*Fin Hay Realty Co.* v. *United States*, *supra; 1432 Broadway Corporation*, 4 T.C. 1158 (1945), affirmed per curiam 160 F.2d 885 (C.A. 2, 1947)) ; and (4) the thin capitalization of the petitioner that would result from classifying the advances as debt (*Ambassador Apartments, Inc.*, *supra*).

With respect to the thin capitalization of the petitioner, Mr. Ackerman testified that the franchise from Holiday Inns was worth $100,000 at the time the advances were made. If the franchise was worth that amount, the debt-equity ratio would be reasonable. See *Ainslie Perrault*, 25 T.C. 439 (1955). However, we find Mr. Ackerman's valuation unconvincing; other evidence tends to indicate that the franchise had much less value. Messrs. Ackerman and Traub purchased all of the petitioner's stock in 1958 for $2,850. At that time, the petitioner owned the Holiday Inn franchise and an option to purchase certain land in Duval County. Even if the land option was completely valueless, the franchise was sold for $2,850. There is nothing to indicate that the sellers were wholly unaware of the value of the franchise, nor to indicate that it increased in value some 4,000 percent between 1958 and the dates of the advances. Thus, the sale

of the franchise for $2,850 provides objective evidence of its value, and that evidence negates Mr. Ackerman's unsupported statement. We therefore reject the petitioner's contention that the true debt-equity ratio of the petitioner would be less than $395,000 to $7,000, or 56 to 1, if we treated the advances as debt.

The petitioner contends that it could have obtained loans from third parties to cover completely the costs of construction of the motel. However, it is not altogether clear as to what would have been the conditions of those loans, but from the evidence which is available, it appears that they would not have been at all comparable to the conditions under which Messrs. Ackerman and Traub made their advances to the petitioner. Had loans been obtained from other sources, the petitioner would have had to pay between 13- and 14-percent interest. Additionally, we wonder whether outside lenders would have been willing to place $170,000 at the risk of this venture without the additional security of having the loans guaranteed by the shareholders, Messrs. Ackerman and Traub. Since the petitioner is attempting to convince us that the advances by Messrs. Ackerman and Traub should be treated as debts because it could have borrowed the funds from outside lenders, it has the burden of proving that the loans by outsiders would have been made under comparable conditions. Compare *Malone & Hyde, Inc.*, 49 T.C. 575 (1968). The mere fact that nonshareholders would have made loans to the corporation does not prove that the advances by the shareholders were loans without showing that the conditions are comparable. No such showing of comparability has been made; to the contrary, the evidence before us indicates that no third party would have made loans on conditions analogous to the advances by the shareholders.

The evidence fails to indicate whether the advances by Messrs. Ackerman and Traub were proportional to their stockholdings in the petitioner. Proportionality would serve to strengthen the respondent's case, whereas disproportionality between advances and stockholdings would be a significant factor indicating debt. Compare *2554-58 Creston Corp.*, 40 T.C. 932 (1963), with *Charles E. Curry*, 43 T.C. 667 (1965). Since the burden of proof is on the petitioner in this proceeding, we cannot, from the lack of evidence, make any inference in favor of the petitioner.

In deciding this case, we have carefully considered *Piedmont Corp.* v. *Commissioner*, 388 F.2d 886 (C.A. 4, 1968), reversing a Memorandum Opinion of this Court, especially since it was decided by the Court of Appeals for the Fourth Circuit, which might be the proper venue in an appeal of this case. Although there are some similarities between this case and *Piedmont*, we have concluded that they are distinguishable. Both cases involved new ventures which turned out to be very

profitable, but in this case, the risk, at the time the advances were made, appears to have been significantly greater. Moreover, in *Piedmont*, the debt instruments called for payment within a relatively short time, and the terms of the obligations were satisfied; whereas, the notes in this case had no fixed maturity dates. Finally, in *Piedmont*, the Court of Appeals found that the shareholders' loans were not subordinated to the debts due other creditors; in this case, there was a first mortgage on the motel property, and in case the petitioner could not meet all its obligations, any debt due Messrs. Ackerman and Traub could not be satisfied out of such property until the first mortgage was paid. In view of these differences, we have concluded that *Piedmont* does not control our decision in this case. *Jack E. Golsen*, 54 T.C. 742 (1970).

We thus hold the advances made by Messrs. Ackerman and Traub were contributions to capital and not loans.[2] Accordingly, the payments by the petitioner with respect to such advances were nondeductible distributions with respect to stock and not interest.

## *Issue 2. Interest Income*

In 1962, Barrett made payments totaling $12,000 on account of its note payable to the petitioner. Each installment was substantially less than the amount called for under the note, and no payment exceeded the amount of interest which accrued on the principal of the loan from the beginning of 1962 to the date of such payment and which was unpaid. During 1962, the interest accrued with respect to the principal balance of the loan exceeded the amount of the total payments by $3,240.19. In 1963, Barrett made payments on the note totaling $19,200. Interest accrued during 1963 totaled $12,893.26.

The respondent contends that the petitioner received interest income of $12,000 in 1962 and $16,133.45 in 1963 ($12,893.26 accrued in 1963, plus $3,240.19 accrued in 1962 but paid in 1963). The petitioner reported as interest income only $6,929 for 1962 and $14,042.03 for 1963. Its position appears to be that under local law, when accrued interest is not paid, it is added to principal. Thus, it contends, when it receives a payment which exceeds the amount of interest due that

---

[2] The stipulation of facts in this case contains statements that the petitioner had "an indebtedness payable to Ackerman and Traub of $170,000" and that "During the taxable years 1962 and 1963, the petitioner made interest payments on the demand notes held by Ackerman and Traub in the amounts as indicated below." It is obvious to us that by these statements the respondent did not intend to concede that the advances of $170,000 were debt rather than equity. The petitioner has at no point argued that the statements in the stipulation constituted a concession by the respondent. Accordingly, we have interpreted such statements as meaning that the petitioner had a formal indebtedness to Messrs. Ackerman and Traub and that the petitioner made payments to Ackerman and Traub which were designated as interest.

month, it should report only the interest due for that month as income and treat the excess as a nontaxable return of principal.

Even if the petitioner is correct in its interpretation of local law, we do not agree with its position in this case. In reaching this conclusion, we start from two basic premises. The first is that interest is compensation for the use of money. *Deputy* v. *DuPont*, 308 U.S. 488 (1940). The second is the fundamental proposition of tax law that in determining the tax treatment of a transaction, substance governs form. *Gregory* v. *Helvering*, 293 U.S. 465 (1935). Viewed substantively, we can perceive no reason why defaulted interest should be transformed into principal for purposes of tax law. Such interest, no matter when paid, is clearly compensation for the use of money, and its character as such does not change merely because it is not timely paid. The fact that a payment is not called "interest" is not controlling for tax purposes if, in substance, it is such. See *Wilshire Holding Corporation* v. *Commissioner*, 262 F. 2d 51 (C.A. 9, 1958), reversing a Memorandum Opinion of this Court.

Having concluded that defaulted interest does not become principal for tax purposes, we must next consider when such interest is treated as paid. Partial payments on a note are generally treated as first applying to interest and then to reduce principal. *Estate of Daniel Buckley*, 37 T.C. 664 (1962); *Estate of Paul M. Bowen*, 2 T.C. 1 (1943); Theodore R. Plunkett, 41 B.T.A. 700 (1940), affd. 118 F. 2d 644 (C.A. 1, 1941). This rule was expressly included in the Barrett note. Since each payment made in 1962 was less than the interest accrued and unpaid to the date of the payment, the entire amount of the payments made in that year were allocable to the payment of interest and taxable as such. Since $16,133.45 of the amounts paid in 1963 is applicable to interest accrued and unpaid at the date of the payments, that amount is allocable to the payment of interest in that year and taxable as such.

Moreover, we do not think the petitioner's construction of local law is correct. The note provides that it is to be construed and enforced in accordance with Florida law. Under such law, although unpaid interest may bear simple interest until paid, provisions for compounding interest on interest by adding it to principal are invalid. *Morgan* v. *Mortgage Discount Co.*, 100 Fla. 124, 129 So. 589 (1930). See also *American Brake Shoe & F. Co.* v. *Interborough R. T. Co.*, 26 F. Supp. 954 (S.D. N.Y. 1939). Therefore, even under the applicable local law, when a payment on the note exceeded the interest due for the month, the excess would not be treated as a payment of principal if there was accrued interest due for previous months.

### Issue 3.   Personal Holding Company Tax

The petitioner filed Schedule PH along with its 1962 and 1963 income tax returns, indicating that it was, in those years, a personal holding company. However, such schedules disclosed no liability for personal holding company tax since deductions taken thereon for income taxes and dividends result in the elimination of all undistributed personal holding company income. The respondent denied the claimed dividends-paid deductions and accordingly determined a personal holding company tax. Sec. 541.

Dividends which are not pro rata with respect to stockholdings are considered preferential dividends, and as such, they are not allowable as a dividends-paid deduction. Secs. 545(a), 561(b), 562(c). Mr. Ackerman owned two-thirds and Mr. Traub owned one-third of the petitioner's stock. Under no reasonable interpretation of the facts before us is it possible to conclude that dividends paid them by the petitioner were in proportion to their stockholdings. Accordingly, we hold that the petitioner was not entitled to any dividends-paid deduction in either 1962 or 1963.

On brief, the petitioner argues that it was not a personal holding company in 1962 or 1963, since its only income in those years, interest on the Barrett note, should be treated as rental income under the provisions of section 543(b)(3). However, the petitioner admitted its personal holding company status by filing Schedule PH with its 1962 and 1963 tax returns; it did not assign as error in its petition the respondent's determination that it was a personal holding company; and it raised this issue for the first time in its brief. Under these circumstances, we hold that the petitioner has raised the issue too late. *J. William Frentz*, 44 T.C. 485 (1965), affd. 375 F. 2d 662 ('C.A. 6, 1967); Rule 7, Tax Court Rules of Practice. The respondent had no opportunity to consider, at or before the trial, whether it wished to offer evidence to meet this argument or to question the petitioner's witnesses regarding it.

### Issue 4.   State Income Taxes

The petitioner contends that it should be allowed to deduct additional South Carolina income taxes that may become due as a result of our decision in this proceeding. However, the petitioner has not shown that additional South Carolina taxes will become due as a result of our decision. Moreover, since the petitioner uses a cash method of accounting, and since any additional South Carolina taxes would not be paid in either 1962 or 1963, it is clear that no deduction

for additional State tax may be allowed for the years 1962 and 1963. See *Eugene Vassallo*, 23 T.C. 656 (1955).

*Decision will be entered for the respondent.*