**SECURITY FINANCE & LOAN COMPANY, Plaintiff,**

v.

**Gus F. KOEHLER, District Director of Internal Revenue, Defendant.**
No. W-2174.

United States District Court
D. Kansas.
Sept. 21, 1962.

R. R. Mitchell, Gould, Mitchell &: Smith, Dodge City, Kan., for plaintiff.

George A. Hrdlicka, Dept. of Justice,. Washington, D. C., for defendant; Louis F. Oberdorfer, Asst. Atty. Gen., Edward S.· Smith, Charles W. Mehaffy, Alphonsus C. Murphy, Attys., Dept. of Justice,. Washington, D. C. and Newell A. George, U. S. Atty., Topeka, Kan., and Robert M. Green, Asst. U. S. Atty., Wichita,. Kan., were with George A. Hrdlicka,. Washington, D. C., on brief.

ARTHUR J. STANLEY, Jr., Chief Judge.

The plaintiff, Security Finance and Loan Company, is seeking recovery of $8,295.30, plus interest, paid by the plaintiff after deficiency assessment against it for the years 1955, 1956, and 1957. The deficiency resulted from the disallowance by the Commissioner of Internal Revenue of payments made by the plaintiff to its stockholders and their relatives, which were designated as interest and deducted as business expense on, the plaintiff's corporate income tax returns during the years in question. Also disallowed for the year 1957, was $3,-

600 of the total directors' fees of $5,400 claimed as a deduction by the plaintiff. It is the position of the Commissioner that the directors' fees for that year were unreasonably excessive.

The plaintiff is a Kansas corporation engaged in the small loan business. All outstanding common stock in the plaintiff corporation, 214²/₇ shares, was owned by the six directors in equal amounts of 35⁵/₇ shares during the three-year period in question. Each share had a par value of $100. The book value of all outstanding shares was $21,428.58. It has been the practice of the plaintiff since its inception to accept advances from its stockholders and their relatives as well as others. These advances were evidenced by demand promissory notes and were carried on the books of the plaintiff as loans in the notes payable ledger. During the years in question, the total of such advances was $111,400 in 1955, $111,000 in 1956, and $129,213.67 in 1957.

The exact amount of loans outstanding to other persons pursuant to plaintiff's small loan operations varied, but, throughout the three-year period, averaged approximately $120,000 per year. The interest rate charged on these loans was 3% per month on the unpaid balance on loans of up to $300, and a straight 10% on loans over $300

In 1957, the plaintiff borrowed $50,000 from a bank to expand operations into a "premium loan" endeavor. The loan was accompanied by a subordination agreement executed by five of the six stockholders. This agreement provided that the advancements by these stockholders to the plaintiff would be subordinated to the bank loan.

The plaintiff paid interest at the rate of 6% on the advancements. The amounts paid were claimed as interest deductions on the plaintiff's income tax returns filed in each of the years in question. In a post audit of these returns, the Commissioner of Internal Revenue disallowed these deductions and assessed a tax deficiency of $8,295.30 on the ground that the amounts paid actually were distributions of dividends, not interest payments.

■■ The basic issue in this case is whether the advancements received by the plaintiff from its stockholders and their relatives were loans, as is claimed by the plaintiff, or whether such advancements were in reality capital investments, as is claimed by the Internal Revenue Service. The burden of establishing that the advancements were loans rests on the plaintiff taxpayer. Arlington Park Jockey Club, Inc. v. Sauber, 262 F.2d 902 (7th Cir.1959). Whether payments of the kind in question constitute payment of dividends or interest depends upon whether the payees are stockholders or creditors, and can be determined only after consideration of all the relevant facts. No single characteristic is necessarily decisive. Crawford Drug Stores v. United States, 220 F.2d 292, 295 (10th Cir.1955).

The contention of the government, that these advancements were not bona fide loans but were capital contributions which made the payments thereon dividends and not interest, is based on three major points: (1) that the plaintiff is a thinly capitalized corporation, that is, the capitalization is insufficient for its business needs; (2) that the notes in question were payable on demand with no fixed maturity dates; and (3) that the subordination agreement indicates that the advancements constituted capital investment rather than loans.

The defendant argues that the plaintiff's capital investment is insufficient and that the debt-equity ratio is excessive. What is a "normal" debt-equity ratio is difficult to say and the choice of financing procedure varies from corporation to corporation. There is no rule which permits the Commissioner to dictate what portion of a corporation's operation should be provided for by equity financing rather than debt. Miller's Estate v. Commissioner of Internal Revenue, 239 F.2d 729, 734 (9th Cir.1956). Here the very business of the plaintiff is the borrowing of funds at one interest rate and lending them at a higher rate.

The plaintiff's business is "buying and selling money." In a case very similar to this one, the court held that the debt-equity ratio and the "thin capitalization" test have little application to the type of business conducted by a loan company. Jaeger Auto Finance Co. v. Nelson, 191 F.Supp. 693 (E.D.Wis.1961).

While it is true that the notes were demand instruments with no fixed maturity dates, there were no agreements among the holders not to enforce their payment. In fact, over $44,000 had been paid upon demand at various times and there is evidence that payment had never been refused upon presentment of any of the notes. The defendant has admitted that these notes are fixed obligations which the plaintiff must pay upon demand of the holders.

The subordination agreement was executed by five of the six stockholders to enable the corporation to obtain a bank loan. It is to be noted that not all stockholders and none of the relatives executed this agreement. Moreover, subordination is not necessarily determinative nor indicative of a stock interest. Debt is still debt despite subordination.

■ The essential difference between a stockholder and a creditor is that a stockholder invests in the corporate venture and takes the risk of loss in order to share in the profit; and the creditor does not intend to take such risks, but merely lends his capital to others who do take them. United States v. Title Guarantee & Trust Co., 133 F.2d 990, 993 (6th Cir.1943). As mentioned, other persons besides the stockholders and their relatives have advanced funds to the plaintiff under the same circumstances as have the stockholders. The fact that there has never been a default in interest payments nor a refusal to honor a note upon demand indicates that little risk is involved. The funds were advanced with reasonable expectation of repayment.

The advances were evidenced by notes and treated as loans on the books of the plaintiff, payments as interest were made semi-annually and the sums so received by the stockholders and their relatives were treated as interest in their individual income tax returns. There is no correlation between the advances as loans and the stockholdings as to amount or proportion; the payments on the advancements were not keyed to corporate earnings; the notes contained no provision whereby they would increase in amount of return through the prosperity of the corporation or by increase in the value of the stock. The holders of the notes had the right to receive interest regardless of corporation profits or losses while dividends paid to the stockholders fluctuated greatly.

The factors supporting a finding that the advancements by the stockholders and their relatives actually were loans far outweigh those which detract from such a finding when viewed in the light of the circumstances and the type of business engaged in by the plaintiff. Jaeger Auto Finance Co. v. Nelson, supra.

■ I find that bona fide debts were created by the advancements reflected by the promissory notes of the plaintiff to the stockholders and their relatives, and that they were not contributions to the capital of the plaintiff corporation. The payments to the holders of the notes were in reality payments of interest and not distribution of dividends. The disallowance of these payments as interest by the Commissioner was erroneous.

■ As to the second issue—the reasonableness of the directors' fees in 1957—the evidence shows that for many years prior to 1957 the established rate of compensation for the directors was $600 per year, but during 1955 and 1956 only $300 was paid. In 1957, the directors decided that the back fees for 1956 in the amount of $300 would be paid as well as the regular fee of $600. This accounts for the $900 figure in 1957 and, therefore, it is not unreasonable.

Judgment will be for the plaintiff.

Counsel will submit an appropriate journal entry of judgment.