ESTATE OF PAUL M. BOWEN, DECEASED, J. B. ANGELL AND E. P. WRIGHT, EXECUTORS, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 111348, 111494.   Promulgated June 1, 1943.

*John M. Hudson, Esq.*, for the petitioners.
*Melvin S. Huffaker, Esq.*, for the respondent.

### OPINION.

BLACK, *Judge:* The Commissioner determined deficiencies of $396.02 and $1,380.13, in petitioners' income tax for the years 1939 and 1940, respectively.  The deficiency for 1939 is due to the disallowance by the Commissioner of a deduction of $18,902.73 claimed by the taxpayer on its income tax return filed for that year as interest paid.  This adjust-

1

ment is explained by the Commissioner in his deficiency notice, as follows:

(a) In your income tax return for the year 1939 an interest deduction was claimed in the amount of $18,902.73 representing payments allegedly made by you during said year to the Receiver of First National Bank of Detroit. These payments in fact represented collections received by the said Receiver in 1939 either as income from collateral or from the proceeds of the sales of collateral previously deposited with the First National Bank by Paul M. Bowen, deceased, sometime prior to 1939, as security for three certain loans made to him by said bank. The Receiver's records disclose that said amount of $18,902.73 was applied as credits against principal and not against interest due thereon. Accordingly, the sum of $18,902.73 has been disallowed as a deduction from your gross income for the calendar year 1939.

The deficiency for the year 1940 resulted from the disallowance by the Commissioner of a deduction of $4,538.10 claimed by the taxpayer as a deduction on its income tax return filed for that year as interest paid. This adjustment was explained in the deficiency notice as follows:.

(a) In your income tax return for the year 1940 an interest deduction was claimed in the amount of $4,538.10 representing payments allegedly made by you during said year to the Receiver of First National Bank of Detroit. During the year 1940 said Receiver collected certain income from collateral and also certain amounts from sales of collateral, a portion of which collections was applied against principal and the balance of $10,827.46 was applied against interest.

There was $41,210.51 accrued and unpaid interest due the Receiver of First National Bank, Detroit, Michigan, at the date of decedent's death which amount has been allowed as a deduction for Federal estate purposes as a debt of the estate. Since the amount of $10,827.46 applied by the Receiver against interest in the year 1940 did not equal the amount of interest accrued at the date of decedent's death, no deduction is allowable for Federal income tax purposes as said amount is chargeable against the corpus of the estate. Accordingly, the amount of $4,538.10 claimed in the return as an interest deduction has been disallowed.

Petitioners by appropriate assignments of error contest the correctness of both the foregoing adjustments. As to the year 1940 petitioners claim an overpayment of $14,012.48 under their main contention. They claim an overpayment of $9,954.10 under their alternative contention in case their first contention is not sustained. Petitioners' respective contentions will be stated in more detail later in this opinion.

The facts have been stipulated and as stipulated are adopted as our findings of fact. The following statement of some of these facts will suffice for the purpose of this opinion.

Petitioners are the duly appointed executors of the estate of Paul M. Bowen, who died December 17, 1935, a resident of the State of Michigan. For the years 1939 and 1940 petitioners filed fiduciary income tax returns with the collector of internal revenue for the district of Michigan at Detroit. At the date of death, Paul M. Bowen,

hereinafter referred to as decedent, owed the First National Bank—Detroit the sum of $248,782.67, of which $207,572.16 represented unpaid principal on three promissory notes and $41,210.51 represented interest accrued thereon at the date of death. This indebtedness was secured by a pledge of stock in various corporations, which collateral was listed on the back of the notes.

In the estate tax return filed by the estate of Paul M. Bowen. the amount of $248,782.67, representing unpaid principal and interest accrued to date of death, was claimed as a deduction under schedule L of the return as a debt against decedent's estate.

Early in the year 1933 the First National Bank—Detroit became insolvent and its assets were committeed to a receiver, B. C. Schram. who is referred to herein as the receiver. At some date prior to date of death of decedent the receiver, having ascertained the decedent's inability to make payments on the notes, arranged for the payment directly to him of all dividends paid on the stocks held .for collateral and also the proceeds from all sales of stock held as collateral to secure payment of the three notes. Thereafter, all dividends and sales proceeds from such collateral were paid directly to the receiver and were applied by him against the principal sum of the indebtedness. and until 1940 no part of such collections was applied by him to interest on indebtedness. The executors of the estate of Paul M. Bowen, after having ascertained that. the receiver was applying all collections to principal on such indebtedness, in a letter dated June 8. 1937, addressed to the receiver, stated: "We instruct you to apply any further sums which you may realize, either as dividends or as the proceeds of the sale of the securities, first against the interest owing upon the notes. until the same is paid in full and only thereafter upon the.principal." Upon receipt of such letter the receiver, nevertheless, continued to apply such collections in the same manner as he had done theretofore.

At the time of taking over the insolvent National Bank here involved, the receiver charged himself or was charged by the office of the Comptroller of the Currency with the principal of the assets and also any interest accrued to that date. The practice of the receiver with regard to payments made by debtors of the insolvent bank was to try to clean up the assets he had been charged with, or, in other words. to clean up the principal of the assets. The receiver was under no instructions from the Comptroller of the Currency to apply payments or collections first against the principal of the indebtedness, but he so applied them because he considered it good business under the circumstances.

The amounts received by the receiver during the years 1939 and 1940 from dividends on the stock held as collateral and from the proceeds of sales of stocks held as collateral were reported in gross income in the fiduciary income tax returns for the years 1939 and 1940

filed by petitioners as executors of the estate of Paul M. Bowen. With respect to the amounts collected by the receiver out of the collateral held by him to secure the indebtedness, the petitioners have been allowed by the Commissioner no deduction for interest for either the year 1939 or the year 1940. Petitioners' fiduciary return of income for the year 1939 was filed March 15, 1940, and showed no tax due. Petitioners' fiduciary return of income for the year 1940, filed March 15, 1941, disclosed a tax liability of $16,382.78, payment of which was made within three years before the filing of the petition in this proceeding. Both such returns were filed on the cash basis.

One of the notes which the decedent owed the bank was for the principal sum of $196,500. The terms and provisions of this note are representative of all three notes, and pertinent parts of these provisions are as follows:

* * * the undersigned * * * having deposited and pledged with said Bank as collateral security for the payment of this note and all other liabilities, absolute or contingent, present or future, several or otherwise, of the undersigned, to said Bank, whether said Bank shall be an original or a subsequent party thereto, the following property, viz: [Collateral is then listed on back of note.] The above described or any other said property (in possession of said Bank) or any item thereof, said Bank, in default of payment of this note or any other said liability, is hereby authorized, at its option, to sell * * * *and to apply the proceeds in such order of priority as said Bank shall elect* * * * *in part or full payment of any said liabilities whether due or not.* * * * Enforcement or preservation of any lien hereunder, or otherwise held, or liability of any party hereto or to any guaranty or other undertaking are hereby waived by each and every party hereto, original or subsequent, *and the holder hereof may deal with such lien or liability as if there were no other party hereto.* [Italics supplied.]

Petitioners' main contention in this proceeding is that from the date of the death of decedent, which occurred on December 17, 1935, up until June 8, 1937, the receiver was within his rights in applying all payments which he received between those dates to the principal of the indebtedness evidenced by the three notes and nothing to interest. Petitioners contend that after June 8, 1937, including the two taxable years involved here, 1939 and 1940, all payments should have been first applied to the payment of interest and the balance to the principal of the debt. If petitioners prevail in this contention, then from figures in the record petitioners contend they will be entitled to a deduction of $6,674.31 interest in 1939 and $47,108.02 interest in 1940, which latter deduction petitioners allege will result in an overpayment of $14,012 48 for that year.

Petitioners' alternative contention is that it is the general rule that, when partial payments are made by the debtor on a debt, the creditor is under obligation to apply the payment first to interest, then to principal. Petitioners, therefore, contend that it was the duty of the

creditor to so apply the partial payments received after decedent's death and that this is so even as to the payments which were made prior to the date of the letter of June 8, 1937, which specifically directed the creditor as to how the payments should be applied. If this alternative contention prevails, petitioners compute from figures which are in the record an interest payment of $21,501.08 in 1939 of interest accruing subsequent to the death of decedent and an interest payment of $34,981.06 in 1940, and ask for deductions accordingly. If petitioners' alternative contention prevails, petitioners allege an overpayment of tax of $9,954.10 for 1940.

Petitioners urge in their brief a still further alternative which is that if the Court overrules both their main contention and their first alternative, then nevertheless they are entitled to a deduction for interest paid in 1940 of at least $10,827.46, which is the amount that the Commissioner concedes that the receiver applied to interest in 1940, and that this deduction would entitle petitioners to an overpayment of $1,350.86 for the year 1940.

The parties seem to be agreed on the facts and they present to us only a question of law. Tables of figures are in the record which show the various payments which were made to the receiver by the estate over the period of years and how the receiver applied them as between principal and interest. Figures are also in the record showing petitioners' contention as to how these payments should have been applied by the receiver as between interest and principal. We have not set out these various tables of figures in this opinion because it is unnecessary. They are a part of the record and can be resorted to in a recomputation under Rule 50.

We think petitioners' first alternative contention should be sustained in principle, though the overpayment which will result from our decision will be less than that which petitioners claim. The Supreme Court of the United States, in the early case of *Story* v. *Livingston*, 13 Pet. 359, stated the rule as follows:

* * * Is there any difference in the effect of a payment, whether made in person by the debtor, or if it arises from the income of his property? The correct rule, in general, is, that the creditor shall calculate interest, whenever a payment is made. To this interest, the payment is first to be applied; and if it exceed the interest due, the balance is to be applied to diminish the principal. If the payment fall short of the interest, the balance of interest is not to be added to the principal so as to produce interest. This rule is equally applicable, whether the debt be one which expressly draws interest, or on which interest is given in the name of damages. * * *

So far as we have been able to find, this has been the rule followed in the Federal courts ever since then. See *Ohio Savings Bank & Trust Co.* v. *Willys Corporation*, 8 Fed. (2d) 463. The Board followed this rule in *Theodore R. Plunkett*, 41 B. T. A. 700, the case of a Massa-

chusetts taxpayer. This rule is followed by the Michigan courts. In the leading Michigan case of *Wallace* v. *Glasser*, 82 Mich. 190; 46 N. W. 227, the Supreme Court of Michigan said:

* * * The rule as claimed by the complainant, and adopted by the circuit court, was the one which is sometimes called the Massachusetts or the United States rule, and was laid down by Chancellor Kent as follows: "When partial payments have been made, apply the payment in the first place, to the discharge of the interest then due. If the payment exceeds the interest, the surplus goes towards discharging the principal, and the subsequent interest is to be computed on the balance of the principal remaining due. If the payment be less than the interest, the surplus of interest must not be taken to augment the principal, but the interest continues on the former principal until the period when the payments, taken together, exceed the interest due, and then the surplus is to be applied towards discharging the principal, and interest is to be computed on the balance as aforesaid." This rule was adopted by this court in *Payne* v. *Avery*, 21 Mich. 524, and is the rule recognized in most of the United States. * * *

The petitioners in arguing for their primary contention, which is that the creditor had the right to do as he did in applying the payments entirely to principal and to the exclusion of interest up until petitioners' letter of June 8, 1937, rely, among other authorities, upon *Mauro* v. *Davie*, 236 Mich. 309, and *Leonard Refineries, Inc.* v. *Gregory*, 295 Mich. 432.

We have examined these cases and we find that they have to do with the right of the creditor to make application of partial payments as between the principal of different debts which the debtor owes the creditor and do not discuss the question of the application of payments as between principal and interest. In fact these cases do not discuss at all the leading Michigan case on that subject, *Wallace* v. *Glasser, supra.*

We can not believe that cases like *Mauro* v. *Davie, supra*, which hold that, in the absence of any direction from the debtor, the creditor has the right to apply payments as between the principal of different debts in any manner that he chooses, have the effect of setting aside the general rule regarding the application of payments as between principal and interest to which we have above referred. If such were the case, then it seems to us that there would be but little virtue in the general rule as applied to ordinary business transactions. There would be but little meaning to what the Supreme Court said in *Story* v. *Livingston, supra*, when it said:

* * * The correct rule, in general, is, that the *creditor* shall calculate interest, whenever a payment is made. To this interest, the payment is first to be applied; and if it exceed the interest due, the balance is to be applied to diminish the principal. * * * [Italics supplied.]

That the general rule is followed by the Federal courts as stated in *Story* v. *Livingston* is disclosed by *Salinger* v. *Lincoln National Life Insurance Co.*, 52 Fed. (2d) 1080. That was a case where the creditor

had in its possession $500 which belonged to the debtor. When the creditor entered suit to foreclose its mortgage it applied this $500 as a credit to the principal of the sum which the debtor owed and nothing to interest which was then due.

The court disapproved this treatment and in disapproving it said:

The appellee [creditor] had in its hands the above-mentioned sum belonging to appellants at the time the first installment of interest became due on August 1, 1928, and also at the time the suit was filed. The money in its hand was more than sufficient to pay the interest. Under these circumstances, appellee's duty was plain, to apply the funds in its possession in payment of the interest due, in response to the demand of appellants. It was interest, not principal, that was due. Even if there had existed a matured obligation with respect to both interest and principal, which there was not, it would still have been incumbent upon the creditor to apply the fund available first in payment of the interest. [Citing cases.]

So what we hold as to the application of the general rule to the facts of the instant case is that after the date of the death of decedent, when the receiver received dividends on the stocks which he held as collateral security and received proceeds from the sale of such collateral, he should have applied these sums first to the payment of interest then due and second to principal. This is all the more true after June 8, 1937. when the petitioners specifically instructed him to so apply all payments made after that date.

The Commissioner in his brief recognizes the prevalence of the general rule to which we have referred and that it exists in the State of Michigan, but he contends that it is not applicable in the instant case because of certain reasons which he argues in his brief. These reasons he states as follows:

1. A written *agreement* exists between the creditor and debtor.
2. Payments applied are *involuntary*.
3. *Insolvency* of the debtor.
4. Proceeds from the sale of *collateral* held to secure the debt of an insolvent debtor, and the creditor applies such proceeds against *principal indebtedness*.

There is no evidence that the estate of Bowen is insolvent. The contrary seems to be true. Therefore reasons 3 and 4 are inapplicable.

We shall now discuss reason 1. above stated. This reason as argued by respondent in his brief is, in substance, as follows: That the parties themselves provided in the collateral notes that the creditor should have the right to apply payments resulting from sale of collateral in any manner that it saw fit. It is undoubtedly true that the debtor and the creditor could by contract provide that the creditor should have the right to apply payments in any manner that he saw fit, as between principal and interest. If such an agreement is made it. of course, requires no citation of authority to establish the principle that the rule which we have cited above would not apply. However,

we do not think the facts in the instant case show any such agreement between the debtor and the creditor.

The language which respondent relies upon to support his contention that there was such an agreement is contained in the collateral notes and reads as follows: "* * * and to apply the proceeds in such order of priority as said Bank shall elect. after deducting all expenses of collection and sale, in part or full payment of any said liabilities whether due or not. * * * and the holder hereof may deal with any such lien or liability as if there were no other party hereto." There is no other evidence of any agreement between the decedent and the bank and respondent relies solely upon this language of the notes. We do not think the language which we have quoted above establishes any agreement between the decedent and the bank as to the order of the application of partial payments upon the notes as between principal and interest. We do not think the language quoted was intended to apply to any such allocation.

A study of the terms of the notes will disclose. we think, that the authority to apply proceeds from the sale of collateral in such order of priority as the bank should elect relates to the application of such proceeds as between the "liability" evidenced by the notes and any other liability owing from the decedent to the bank. The notes, after reciting the due date thereof and the principal amount with the interest rate, then provide that the collateral pledged with the bank was as "security for the payment of this note and all other liabilities. absolute or contingent, present or future. several or otherwise. of the undersigned to said Bank, whether said Bank shall be an original or a subsequent party thereto." On the lower portion of the note, wherein the language relied upon by the respondent appears, the authority granted to the bank to sell and apply the proceeds is "to apply the proceeds in such order of priority as said Bank shall elect. * * * in part or full payment of any said liabilities, whether due or not." We think a reasonable construction of this language is that the parties intended the collateral to secure the bank for the payment of not only the liability under the particular note, but also any other note or loan owing from the decedent to the bank. We think the language of priority which we have quoted above was clearly intended to give the bank the right of selecting priority of application of payments as between several obligations or liabilities. We do not think it can be reasonably construed to have had any other purpose. Regarding the closing clause of the notes, which reads "and the holder hereof may deal with such lien or liability as if there were no other party hereto," it simply means that the parties were contracting to waive presentment. demand, protest, and notice and that the holder of the collateral might go ahead and sell it without observing these formalities. We, therefore, hold against respondent's contention that the language in the notes had the effect by contract to

give the creditor the right to make any application that he chose of the payments as between interest and principal and thus set aside what respondent concedes to be the general rule in such cases, and further set aside the right of the debtor to direct how the partial payments should be applied as was done in the letter of June 8, 1937.

Respondent next contends that, even though the Court should rule against him in his contention as to the meaning of the provisions in the loan contracts. nevertheless. during the periods in question said payments were involuntary and petitioners thereby lost the right to direct the application of such payments. In support. of this contention. respondent quotes from 48 Corpus Juris, section 86, page 642, as follows:

Applicability to Involuntary Payments. The rule giving a debtor or creditor a right to direct application of voluntary payments has no application to involuntary payments, such as result from an execution or judicial sales. * * * *

In the first place, the sales of collateral which took place in the instant case were not execution or judicial sales. It should be borne in mind that in the instant case it is not the debtor which is insolvent—it is the creditor. The bank was in receivership, not the estate of Paul M. Bowen. Therefore the argument made by respondent in this respect is not applicable. As we have already pointed out. there is nothing to show in the record which we have before us that the estate of Paul M. Bowen was in bankruptcy or receivership. It is true that the creditor had to resort to a sale of the collateral to effect a collection of its debt. but that often occurs without there being any necessity for bankruptcy or receivership for the debtor. To say the least of it, there is nothing to show in the instant case that the payments in question were involuntary and therefore outside the general rule. All that we know about the nature of these payments is what is stipulated in the record. The stipulation in that respect reads as follows:

* * * At some. date prior to date of death of decedent, the receiver; having ascertained the decedent's inability to make payments on the notes arranged for the payment directly to him of all dividends paid on the stocks held for collateral and also the proceeds from all sales of stock held as collateral to secure payment of the three notes. Thereafter, all dividends and sales proceeds from such collateral were paid directly to the receiver and were applied by him against the principal sum of the indebtedness. and until 1940 no part of such collections was applied by him to interest on indebtedness.

We take it that the above quoted language, where it says that the receiver "arranged" to have the dividends and proceeds of sales of collateral made direct to it. means that the receiver arranged by voluntary agreement with decedent prior to his death that this should be done. We see no reason why any other construction should be given to the language used and, so construing, we hold that the payments made were voluntary and not of the nature of those made under execu-

tion or judicial sales. We, therefore, hold against respondent on this point.

Therefore, having held against respondent on both of these points, we hold. as already stated, that all partial payments made on these notes after the date of decedent's death should be applied first to interest and then to principal.

There is some discussion in the briefs as to whether the payment by the estate of Paul M. Bowen of any part of the $41,210.51 interest which had accrued on the notes at the date of the death of Paul M. Bowen would be deductible as interest when paid by the estate. Respondent contends that said amount of $41,210.51 was allowed as a claim against the estate in computing the net value of the estate at the date of decedent's death and, therefore. when the estate paid it thereafter, it would not be deductible as interest under the provisions of section 23(b) in computing the net income of the estate. Petitioners contend that it makes no difference that the $41,210.51 in question had been deducted as a claim against the estate, that nevertheless it represents interest and that, when paid by the estate as its legal liability after decedent's death, the estate is entitled to a deduction therefor as interest paid under the provisions of section 23(b) of the Internal Revenue Code. In support of this contention the petitioners cite *Helvering* v. *Highland*, 124 Fed. (2d) 556, and *Estate of M. M. Stark*, 45 B. T. A. 882.

The decision of this question would become important only if we sustained the Commissioner's contention that the creditor was within its rights in applying all payments through 1940 first to principal and then to interest. Under that method no interest was paid until 1940 and then only $10,827.46. which would be considerably less than the $41,210.51 interest which had accrued at the time of decedent's death. However, we have ruled against respondent's contention in this respect and have held that the general rule as to the allocation of payments between principal and interest applies. Under this method of application of payments, it is clear that most of the $41,210.51 interest due at the time of the death of decedent was paid in years prior to 1939. In that year payment of all interest due at decedent's death was completed and apparently $21,501.08 was paid on interest which accrued subsequent to decedent's death. This interest. the correct amount thereof. was clearly deductible by petitioners under section 23(b) of the Internal Revenue Code in computing their net income and leaves no taxable net income for that year without the use of any of the $8,410.24 paid in 1939 on the prior-to-death interest. We therefore, find it unnecessary to decide the issue between petitioners and respondent as to the deductibility of prior-to-death interest.

Petitioners contend under their first alternative that in 1940 they paid $34,981.06 on interest which had accrued subsequent to decedent's

death. The figures for this contention are in the record as Exhibit G and may be summarized as follows:

| | |
|---|---:|
| Interest owing on Dec. 17, 1935 | $41,210.51 |
| Interest paid 1936 to 1938, inc | 32,800.27 |
| Balance | 8,410.24 |
| Interest accrued Dec. 17, 1935, to Jan. 1, 1939 | 37,426.16 |
| Interest owing on Jan. 1, 1939 | 45,836.40 |
| Interest paid during 1939 | 29,911.32 |
| Balance | 15,925.08 |
| Interest accrued during 1939 | 12,810.97 |
| Interest owing on Jan. 1, 1940 | 28,736.05 |
| Interest accrued during 1940 | 6,245.01 |
| Deduction claimed by petitioner for 1940 under first alternative | 34,981.06 |

In the above computation petitioners have accrued after-death interest upon larger balances of principal than those actually used by the receiver. In other words, the receiver is not asking for nor will he ever actually collect as much after-death interest as petitioners contend they are entitled to deduct. We do not think petitioners are entitled to deduct any more after-death interest than the receiver is claiming. To a taxpayer on the cash basis the interest which he is entitled to deduct under 23 (b) of the Internal Revenue Code is the amount actually paid. The after-death interest which the receiver actually accrued and will actually collect as interest is in the record as Exhibit E–1, and upon the basis of these figures, applying the general rule which we have held applicable, we hold petitioners are entitled to a deduction of $25,880.39 for interest paid during 1940, computed as follows:

| | |
|---|---:|
| Interest owing on Dec. 17, 1935 | $41,210.51 |
| Interest paid 1936 to 1938, inc | 32,800.27 |
| Balance | 8,410.24 |
| Interest accrued Dec. 17, 1935, to Jan. 1, 1939 | 35,715.97 |
| Interest owing on Jan. 1, 1939 | 44,126.21 |
| Interest paid during 1939 | 29,911.32 |
| Balance | 14,214.89 |
| Interest accrued during 1939 | 10,087.92 |
| Interest owing on Jan. 1, 1940 | 24,302.81 |
| Interest accrued during 1940 | 1,577.58 |
| Interest paid for 1940 | 25,880.39 |

*Decision will be entered under Rule 50.*