OPINION Kaum:, Judge: Petitioner has taken the position that First Western was required by law to apply the proceeds from the foreclosure sale of September 11,1968 ($227,477.97), first to accrued interest (approximately $143,570.90, by the bank’s computations) and not to treat those proceeds, as it did, entirely as a recovery of overdue principal. The Commissioner maintains that the bank’s actions were proper, and we think that his position must prevail. To be sure, it is well established that a voluntary 'partial payment on indebtedness, made in ordinary course without any designation by the debtor as either principal or interest and in the absence of any agreement in this respect between debtor and creditor, is to be applied to interest before principal. See Story v. Livingston, 38 U.S. (13 Pet.) 359, 371; Motel Corp., 54 T.C. 1433, 1440; Estate of Paul M. Bowen, 2 T.C. 1, 5, 7; cf. George S. Groves, 38 B.T.A. 727, 737, limited in another respect by B. F. Edwards, 39 B.T.A. 735, 738-739. However, that rule does not appear to be applicable in the case of an involuntary foreclosure of mortgaged property, particularly where the debtor is insolvent. In John Hancock Mutual Life Ins. Co., 10 B.T.A. 736, a creditor foreclosed on mortgaged property and purchased that property itself at a price less than the outstanding principal on the underlying obligation. It was held that no portion of the purchase price was al-locable to accrued interest owing at the time of the foreclosure proceedings. Although the creditor in that case was a life insurance company which was taxed under special provisions of the statute, the term “interest” as used in such provisions was construed to have its “usual and ordinary meaning.” 10 B.T.A. at 739. In similar circumstances, where a debtor conveyed mortgaged property to his creditor in order to avoid a foreclosure sale on that property and the fair market value thereof was less than the amount of unpaid principal, it has consistently been held that the creditor realized no interest income from the recovered property even if interest as well as principal was payable at the time of the conveyance. Helvering v. Missouri State Life Ins. Co., 78 F. 2d 778, 780 (C.A. 8); Manufacturers Life Insurance Co., 43 B.T.A. 867, 873-874; [4] cf. Manhattan Mutual Life Insurance Co., 37 B.T.A. 1041, 1043-1044. Thus, cases of this character are to be sharply distinguished from those involving voluntary partial payments. Nor is the result reached in such cases to be limited to life insurance companies, for, as indicated above, the meaning of the word “interest” as used in the life insurance provisions of the statute is the same as in other parts of the Code. Estate of Paul M. Bowen, 2 T.C. 1, l’elied upon by petitioner, is distinguishable. To be sure, that case holds that the “interest-first” rule may be applicable even to the proceeds of a foreclosure sale. But the Boxeen Court carefully pointed out that the creditor had “arranged by voluntary agreement with” the debtor that the collateral should be sold to repay the debt and “that the payménts made were voluntary.” 2 T.C. at 9. No such finding was made in the John Hancock case. And the conveyances in the other “life insurance” cases were “voluntary” only in the sense that the creditor acquiesced therein solely to avoid forced sales of the mortgaged properties. The September 11, 1968, foreclosure sale by First Western, in respect of which petitioner seeks to have the Bowen rule apply, was unquestionably involuntary on his part. At the trial herein, he emphasized that he had made plain his opposition to such a sale well before it took place. Moreover, Bowen is further distinguishable on the ground that the Court there explicitly stated that there was “no evidence” that the taxpayer was “insolvent.” 2 T.C. at 7. In the present case, on the other hand, the record strongly indicates that petitioner was insolvent. Petitioner’s note was in default at maturity, on September 28, 1966, and beginning in November 1966, he agreed to the application of the proceeds of certain sales of collateral to principal. He admitted at the trial that he did not have any other assets of consequence at that time. Nor did he show that his financial condition improved between that time and the forced sale of the collateral here in issue in 1988. He made no payments whatever on his note after maturity (apart from the application of proceeds of sales.of collateral), and the bank quite understandably treated the note as uncollectible apart from the collateral. Thus, the evidence shows that on March 9, 1967, it set up a reserve of $227,190 against the loan, that on July 2, 1968, it set up an additional reserve of $89,500 against the loan, and that finally, on 'September 17, 1968, it increased the reserve by an additional $155,798.59, thereby wiping out the entire asset on its books. Further, the evidence shows that for internal accounting purposes, the 'bank not only ceased to accrue any interest on the loan after December 12, 1966, but that on March 9, 1967, it retroactively reversed the accrual of unpaid interest (in the amount of $30,511.15) from June 30,1966, to December 12,1966. We have no doubt on the evidence before us that petitioner was insolvent at all relevant times in respect of the issue before us. ■The significance of petitioner’s insolvency cannot be minimized. What would be deductible by him as interest would similarly be in-cludable in the bank’s income as interest received. And we find it difficult to believe that a creditor who was foreclosed on the collateral of an insolvent debtor, and who will never get back the full amount of his principal, is required to report a fictitious amount of income designated as interest.”[5] Nor is any support for petitioner’s position to be found in the statement 'by the Los Angeles Superior Court during the course of the July 19, 1972, hearing, or otherwise in the law of California. We are required to give only “proper regard,” and not necessarily to follow, decisions of local trial courts as to matters of local law. Cf. Commissioner v. Estate of Bosch, 387 U.S. 456, 465. The trial judge’s remarks, which were supported by no citation to authority and uttered after discussions in chambers of an undisclosed nature, but which obviously related to the settlement of the case between the parties, are hardly persuasive in the context of the issue before us. And petitioner’s reli-anee on section 1479 of tlie California Civil Code (West 1954)[6] is likewise misplaced. That section plainly does not govern the application of “involuntary” payments, particularly those arising out of a foreclosure sale not agreed to by the debtor. Ohio Electric Car Co. v. Le Sage, 198 Cal. 705, 709, 247 Pac. 190, 192; Brunswick Corporation v. Hays, 16 Cal. App. 3d 134, 138-139, 93 Cal. Rptr. 635, 637-638 (2d Dist. Ct. App.). Decision will he entered for the respondent. A different situation exists where the amount of the creditor’s bid on a foreclosure is equal to principal plus accrued interest, as noted in the Manufacturers Life Insurance Oo. case, which thus distinguished Helvering v. Midland Insurance Co., 300 U.S. 216. A different result may be called for where the creditor unilaterally elects to treat the proceeds from a foreclosure sale as payments of interest rather than principal. See Kate Baker Sherman, 18 T.C. 746, 753, questioned in another respect in Mozelle Rushing, 58 T.C. 996, 1000. First Western applied the proceeds here in issue to principal, however, and we express no opinion as to the tax consequences attaching to such an exercise of discretion by a creditor in other circumstances. Sec. 1479. Act of performance applicable to two or more obligations; application to specific obligation— Where a debtor, under several obligations to another, does an act, by way of performance, in whole or in part, which is equally applicable to two or more of such obligations, such performance must be applied as foUows: One — If, at the time of performance, the intention or desire of the debtor that such performance should be applied to the extinction of any particular obligation, be manifested to the creditor, it must be so applied. Two — If no such application be then made, the creditor, within a reasonable time after such performance, may apply it toward the extinction of any obligation, performance of which was due to him from the debtor at the time of such performance; except that if similar obligations were due to him both individually and as a trustee, he must, unless otherwise directed by the debtor, apply the performance to the extinction of all such obligations in equal proportion; and an application once made by the creditor cannot be rescinded without the consent of [the] debtor. Three — If neither party makes such application within the time prescribed herein, tlie performance must be applied to the extinction of obligations in the following order; and, if there be more than one obligation of a particular class, to the extinction of all in that class, ratably: 1. Of interest due at the time of the performance. 2. Of principal due at that time. 3. Of the obligation earliest in date of maturity. 4. Of an obligation not secured by a lien or collateral undertaking. 5. Of an obligation secured by a lien or collateral undertaking.