ESTATE OF HARRY W. RATLIFF, DECEASED, THE FIRST NATIONAL BANK AND TRUST COMPANY, VINITA, OKLAHOMA, PERSONAL REPRESENTATIVE, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Ratliff v. Commissioner
Docket No. 16017-91.
United States Tax Court
T.C. Memo 1995-428; 1995 Tax Ct. Memo LEXIS 430; 70 T.C.M. (CCH) 600; September 5, 1995, Filed *430 Decision will be entered under Rule 155. Thomas J. McGeady and John J. McQueen, for petitioner. Edith F. Moates, for respondent. GERBER, Judge GERBER
MEMORANDUM FINDINGS OF FACT AND OPINION GERBER, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income taxes as follows: Additions to Tax
Sec.
Sec.
Sec.
6653(a)(1)
Sec.
Sec.
Year
Deficiency
6653(a)(1)
6653(a)(2)
(A)
6653(a)(1)(B)
6661
1985
$ 13,547
$ 677
[1]
-
-
$ 3,387
1986
10,505
-
-
$ 525
[2]
2,626
1987
53,896
-
-
2,695
[2]
13,474
1988
38,085
1,904
-
-
-
9,521
After concessions, the issues for our consideration are: (1) Whether respondent may allocate certain payments, which were designated by agreement as principal, to interest income during the years at issue; (2) whether petitioner is liable for additions to tax for negligence or intentional disregard of rules or regulations; and (3) whether petitioner is liable for additions to tax for substantial understatement of income tax. FINDINGS OF FACT Unless otherwise indicated, *431 section references are to the Internal Revenue Code in effect during the years at issue. Rule references are to the Tax Court's Rules of Practice and Procedure. The stipulated facts and exhibits are incorporated by this reference. Harry W. Ratliff (Ratliff), resided in Vinita, Oklahoma, at the time his petition was filed. He died on April 7, 1992, and his estate was substituted as petitioner on November 3, 1992. Prior to 1978, Ratliff operated liquor stores in California through his wholly owned corporation, Huntress, Inc. [1] In 1978, Ratliff sold his liquor stores (including the land) to an employee, Gerald Mungo (Mungo). As part of the sale, three notes (Mungo notes) were issued. The Mungo notes listed Gerald P. Mungo or his wholly owned corporation, Jaygo, Inc., as the payor, and either Ratliff or Huntress, Inc., as payee. Petitioner received interest income of $ 81,117, $ 71,759, $ 61,361, and $ 50,030 on the Mungo notes for 1985, 1986, 1987, and 1988, respectively. Petitioner has conceded that Ratliff failed to report interest income from the Mungo notes. *432 Shadowood Corp. was formed on May 26, 1982. Mungo and John E. Hendershot, Jr. (Hendershot), each owned 50 percent of the stock. On August 6, 1982, Shadowood Corp. formed Shadowood Development Co., a limited partnership, in order to build a shopping center in Compton, California. The shopping center's land cost $ 150,000; Mungo and Hendershot each contributed $ 75,000. On February 1, 1983, Ratliff loaned Shadowood Development Co. $ 600,000. This loan was evidenced by a 15-year note, which was signed by Mungo as the general partner and president of Shadowood Development Co. Interest was stated at 14 percent, and monthly payments were scheduled at $ 7,990.42. [2] An addendum to the note, also dated February 1, 1983, stated that Hendershot, Mungo, and Jaygo, Inc., guaranteed payment of the principal and interest. The note contained the following language: "All installments paid hereunder shall be applied to reduction of principal until all principal hereunder has been paid in full, and thereafter to interest." Payments under this note were made during all the years at issue. *433 On May 1, 1983, Ratliff sold Randy's Village Market (also known as Wes's Little General Store) to Randy and Vicki Bennett. The Bennett contract provided for monthly payments of $ 5,000, which included interest at 12 percent. Moreover, the contract stated that "All payments on this contract are to be applied to principal only until the original amount of $ 279,000 is paid in full." Ratliff was paid $ 40,000, and reported interest income of $ 25,937 for 1985. In 1986, Ratliff reported $ 19,994 of interest income from the Bennett sale. On October 1, 1984, Shadowood Development Co. borrowed $ 400,000 from Ratliff. Similar to the 1983 loan, this loan was evidenced by a 15-year note, which was signed by Mungo on behalf of Shadowood Development Co., and Hendershot, a limited partner. The stated interest rate was 14.95 percent, and monthly payments were to be $ 5,584.81. [3] The note was guaranteed by Mungo, Hendershot, and Jaygo, Inc. This note also contained the language regarding the timing of principal and interest, similar to the 1983 note. These funds were used to construct a shopping center in Lakewood, California. Payments on this note were made to Ratliff during all years at issue. *434 On September 9, 1986, Ratliff loaned Shadowood Development Co. $ 500,000. Once again, this loan was evidenced by a 15-year note signed by Mungo for Shadowood Development Co., and Hendershot, limited partner. The loan was made at 9 percent, and each monthly payment was fixed at $ 5,071.65. [4] The loan was personally guaranteed by both Mungo and Hendershot. This note contained the same principal and interest timing language as did the 1983 and 1984 notes. The proceeds from this loan were used to build a shopping center in Paramount, California. Payments were made to Ratliff on this loan during 1986, 1987, and 1988. Shadowood Partners was a partnership formed in 1986 in order to build another shopping center in Paramount, California. The partnership *435 interests were owned as follows: 49.5 percent each by Mungo and Hendershot, and 1 percent by Shadowood Corp. On June 12, 1987, Ratliff loaned Shadowood Partners $ 1 million, evidenced by a 15-year note signed by Mungo as general partner and president of Shadowood Corp., and Hendershot, as a limited partner. The note carried a 12-percent interest rate, and each payment was fixed at $ 12,001.70. The obligation was guaranteed by Mungo and Jaygo, Inc. This obligation was subject to the principal and interest timing clause, similar to the other debt. Payments on this note were made to Ratliff during 1987 and 1988. On December 30, 1988, the total outstanding balances on all three Shadowood Development Co. loans were consolidated and evidenced by one note in the amount of $ 1,312,912. For the years at issue, Ratliff was a cash basis taxpayer and did not report any interest income with respect to any of these loans. Shadowood Development Corp. and Shadowood Partners, however, were accrual basis taxpayers and deducted the interest payments made to Ratliff during the relevant years on its tax returns. The Shadowood notes were, at all relevant times, unsecured. Ratliff ultimately pledged *436 these notes to the First National Bank of Vinita, Vinita, Oklahoma, as security for loans made by the bank to him. OPINION Cash basis taxpayers are required to include income when it is received; accrual basis taxpayers report income when it is earned. Ratliff was a cash basis taxpayer during the years at issue. Under the note terms chosen by the parties, payments were assigned to principal reductions and to interest after all principal had been repaid. In accord with those terms, Ratliff reported no interest income attributable from note payments for any of the years at issue. Petitioner argues that this accounting treatment was appropriate because the loans were very risky (i.e., petitioner stresses that the debts were unsecured and highly speculative). Respondent determined that a portion of the payments Ratliff received in 1986, 1987, and 1988 was interest income under section 1.446-2(b)(1) and (d)(1), Proposed Income Tax Regs., 51 Fed. Reg. 12031, 12032 (April 8, 1986), and asserts that Ratliff's method of accounting did not clearly reflect income. See sec. 446(b). In a prior opinion concerning the parties' summary judgment motion, we held that reliance *437 on the proposed regulation, or lack thereof, would not play an important role in the resolution of this case. Estate of Ratliff v. Commissioner, 101 T.C. 276 (1993). In the prior opinion, we noted that proposed regulations do not have the same force and effect as final regulations. Accordingly, our focus here is on respondent's discretion to determine a method of accounting for a taxpayer under section 446(b). In Thor Power Tool Co. v. Commissioner, 439 U.S. 522, 532-533 (1979), the Supreme Court reiterated that the Commissioner has broad authority under section 446(b) with which to determine whether a taxpayer's method of accounting clearly reflects income. This authority extends to the accounting for specific items as well. Prabel v. Commissioner, 91 T.C. 1101, 1112 (1988), affd. 882 F.2d 820 (3d Cir. 1989). Holding that such adjustments by the Commissioner cannot be disturbed unless "clearly unlawful", the Court noted that, in this area, taxpayers have the more stringent burden of proving that the Commissioner's determinations are arbitrary. Thor Power Tool Co. v. Commissioner, supra at 532. *438 When, however, a taxpayer's method of accounting is clearly an acceptable method, the Commissioner may not require a change. Prabel v. Commissioner, supra.
Ratliff applied each loan payment to principal, claiming that this was proper because the Shadowood loans were unsecured and, thus, quite risky. In Newhouse v. Commissioner, 59 T.C. 783 (1973), the taxpayer borrowed money from a bank, and he pledged certain stocks and securities as collateral. Upon the taxpayer's default, the bank was to apply the collateral "as it 'in its discretion may determine.'" Id. at 785. After determining that the collection of the taxpayer's debt was unlikely, the bank notified him that it would sell the collateral and apply the proceeds first to principal. In a later proceeding, a California State court held that the bank should have applied the proceeds to any interest then due. In Newhouse, we held that, as the payment involved was the result of an involuntary forced sale, and because the evidence showed that the debtor was insolvent, the collateral proceeds were properly applied first to the principal *439 balance. Here, petitioner argues that the Shadowood loans were extremely risky. However, petitioner has not shown that the debtors did not or were not able to pay the original loans. Ratliff was actually receiving scheduled payments on time when each of the additional loans was made to Shadowood Development Co. or Shadowood Partners. At the inception of each loan, there were no signs that the loans were speculative. In Underhill v. Commissioner, 45 T.C. 489, 495 (1966), we held that, in determining whether a particular obligation is "speculative", the ultimate test is whether, at the debt's inception, the creditor cannot be reasonably certain of recovering the principal and a "major portion of the discount." In the instant case, Ratliff had no such warning signs. The mere absence of security is not sufficient to deem the loan speculative. Furthermore, despite petitioner's contention to the contrary, there is no language in the notes from which one could infer that the notes were risky during the years at issue. [5]
*440 It is curious that Ratliff had amortization schedules prepared, which allocated principal and interest over the years where the note calls for allocation solely to principal. These amortization schedules were used in calculating the amount of principal and interest to be considered in the subsequently consolidated note. If the loans were speculative, as petitioner argues, then the principal allocation would have consistently shown that, instead of allocating principal and interest solely for tax purposes as the record reflects. Petitioner also argues on brief that, because the Commissioner did not propose adjustments to several of Ratliff's earlier taxable years, the adjustments at issue in this case cannot be made. Petitioner claims that this is evidence that respondent approved of Ratliff's method of accounting. We disagree. We have consistently held that the Commissioner may order the use of a different accounting method as to only one year. Burck v. Commissioner, 533 F.2d 768 (2d Cir. 1976) (citing S. Garber, Inc. v. Commissioner, 51 T.C. 733 (1969)), affg. 63 T.C. 556 (1975). The Commissioner *441 may determine a deficiency for only one of several years in which a taxpayer has used a certain method of accounting for a certain item. S. Garber, Inc. v. Commissioner, supra."Respondent is not estopped from computing a taxpayer's income on an accrual method of accounting because of the fact that he has examined prior returns without objection to the method used by the taxpayer." Ezo Products, Co. v. Commissioner, 37 T.C. 385, 391 (1961) (citing Caldwell v. Commissioner, 202 F.2d 112 (2d Cir. 1953), affg. a Memorandum Opinion of this Court). Petitioner has not shown that respondent's determination was arbitrary. Accordingly, interest should have been included in income, during the years at issue, with respect to the Shadowood loans. Respondent determined that petitioner is liable for additions to tax for negligence or intentional disregard of rules or regulations during the years at issue, under their respective sections. Negligence is defined as a "'lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances.'" Neely v. Commissioner, 85 T.C. 934, 947 (1985) *442 (quoting Marcello v. Commissioner, 380 F.2d 499, 506 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964) and T.C. Memo. 1964-299). Petitioner bears the burden of showing that respondent erred and that Ratliff was not negligent. Rule 142(a); Bixby v. Commissioner, 58 T.C. 757, 791-792 (1972). No evidence was offered to justify Ratliff's failure to include interest income from the Shadowood notes during the years at issue. We find that petitioner is liable for the negligence addition to tax for the years in issue as determined by respondent. Finally, respondent determined that petitioner is liable for additions to tax for substantial understatement of income tax. An individual's income tax is substantially understated if the amount of the understatement exceeds the greater of 10 percent of the tax required to be shown on the tax return or $ 5,000. Sec. 6661(b)(1(A). Section 6661(b)(2)(B) provides that any such understatement can be reduced by the portion for which there was substantial authority or adequate disclosure on the tax return. Petitioner *443 has not shown substantial authority supporting the understatements. In addition, the tax returns did not contain any disclosure of Ratliff's tax position or reference the notes, principal, or interest. Therefore, to the extent that petitioner's understatements meet the "substantial" threshold, the additions to tax under section 6661 apply. Decision will be entered under Rule 155.
Footnotes
1. 50 percent of the interest due on the deficiency.↩
2. 50 percent of the interest due on the deficiency.↩
1. Huntress, Inc., was a California corporation organized Jan. 25, 1956, and suspended Oct. 1, 1982, by order of the California Franchise Tax Board.↩
2. The last payment for this note was scheduled to be $ 8,007.58.↩
3. The last payment was scheduled to be $ 5,482.55.↩
4. The last payment on this note was to be $ 4,951.67.↩
5. After the years at issue, Shadowood Partners and Shadowood Development Co. did experience financial difficulties. On Sept. 22, 1989, a receiver was appointed for Shadowood Partners, and in Oct. 1989, Shadowood Development Co. filed a petition in bankruptcy. Ratliff v. Commissioner, 101 T.C. 276, 281↩ n.4 (1993).