# United States Tax Court

T.C. Memo. 2022-60

RONALD W. HOWLAND, JR. AND MARILEE R. HOWLAND,
Petitioners

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

—————

Docket No. 17526-19.                              Filed June 13, 2022.

—————

*Scott St. Amand* and *Harris L. Bonnette, Jr.*, for petitioners.

*Miriam C. Dillard* and *A. Gary Begun*, for respondent.


## MEMORANDUM OPINION

WEILER, *Judge*: Petitioners seek redetermination of the deficiency and penalty respondent determined in a notice of deficiency for tax year 2016. The issues for decision are (1) whether petitioners are entitled to a home mortgage interest deduction of $103,498 claimed on Schedule A, Itemized Deductions, of their Form 1040, U.S. Individual Income Tax Return, for tax year 2016 and (2) whether petitioners are liable for the accuracy-related penalty under section 6662(a).[1]

### *Background*

On December 8, 2021, the parties moved to submit this case fully stipulated under Rule 122, and the motion was subsequently granted

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code (Code), Title 26 U.S.C., in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. All dollar amounts are rounded to the nearest dollar.

[*2] during the Court's Jacksonville, Florida, remote trial session. The evidence in this case includes the parties' Stipulation of Facts, and those facts are so found. Petitioners resided in Florida when they filed their Petition.

In 2007 petitioners executed a credit agreement with Haven Trust Bank, consisting of a promissory note and mortgage secured by their principal residence, with respect to a line of credit up to $390,000 (credit agreement). This credit agreement in favor of Haven Trust Bank was secondary to petitioners' first mortgage loan held by Countrywide Home Loans. Under the terms of the credit agreement held by Haven Trust Bank, petitioners' payments are applied first to interest and then to principal.

Haven Trust Bank was closed in 2010 and entered receivership with the Federal Deposit Insurance Corporation (FDIC), in which the FDIC entered into a loss-share transaction with First Southern Bank related to the assets of Haven Trust Bank, whereby petitioners' loan with Haven Trust Bank was acquired by First Southern Bank.

In June 2014 First Southern Bank merged with CenterState Bank. Since petitioners had not made any payments on the Haven Trust Bank credit agreement, First Southern Bank filed a verified complaint for foreclosure (foreclosure complaint) in the Seventh Judicial Circuit Court for St. Johns County, Florida (circuit court). When the foreclosure complaint was filed, petitioners owed $377,060 in principal on the credit agreement, plus accrued interest, fees, and other charges. In the foreclosure action First Southern Bank sought an award from the circuit court for the full amount due from petitioners, including the right to foreclose on petitioners' residence based on the granted credit agreement.

As part of the foreclosure complaint, the circuit court entered a summary final judgment, resulting in a foreclosure sale of petitioners' residence on July 28, 2016. CenterState Bank was the highest bidder at the foreclosure sale and acquired the residence with a bid of $321,000. At the time of the foreclosure sale, the sum of the accrued interest on the credit agreement was $100,607.

On June 9, 2016, a second foreclosure complaint regarding petitioners' residence was filed in the circuit court by the first mortgage holder, Bank of New York Mellon, as successor in interest to Countrywide Home Loans. Bank of New York Mellon claimed a balance

**[*3]** due of principal, interest, late charges, attorney's fees, and other permitted expenses of $247,046.

On December 30, 2016, CenterState Bank sold petitioners' residence to third parties for $594,000. No Internal Revenue Service (IRS) Form 1098, Mortgage Interest Statement, was issued to petitioners for tax year 2016 for the home mortgage interest in question. There is no evidence in the record as to how the sale proceeds of $594,000 were applied to petitioners' debts with First Southern Bank and Bank of New York Mellon.

Petitioners timely filed their joint 2016 Form 1040, claiming a home mortgage interest deduction of $103,498 on Schedule A. On October 1, 2018, the IRS sent petitioners an automatically generated Letter 566–S and Form 14809, Interest You Paid, requesting an explanation of their claimed home mortgage interest deduction. On November 26, 2018, the IRS sent petitioners additional letters, to which they responded (through their representative) by providing the IRS with documents on February 1, 2019.

Revenue Agent (RA) Beverly Starks was assigned examination of petitioners' 2016 Form 1040 on April 23, 2019. On May 8, 2019, RA Starks completed the "Penalty Substantial Understatement Lead Sheet" (penalty lead sheet), and on May 9, 2019, the IRS issued to petitioners (with a copy to their representative) IRS Letters 692–M and 937(SC), including Form 4549, Income Tax Examination Changes, and Form 886–A, Explanation of Items. RA Starks's immediate supervisor, Carmen Grimes, approved the penalty lead sheet on May 9, 2019.

*Discussion*

I.    *Summary of the Parties' Arguments*

Petitioners argue that the foreclosure of their mortgage constituted a taxable sale or exchange. Next, petitioners contend the fair market value of the residence is equal to the price that a willing buyer paid shortly after the foreclosure. On the basis of the terms of the credit agreement, petitioners contend the amount CenterState Bank received in the foreclosure proceedings and specifically in the subsequent sale to a third party should be applied first to their outstanding interest owed, and then to principal. Finally, petitioners oppose the imposition of the penalty under section 6662(a) on two grounds: (1) the IRS failed to obtain timely supervisory approval before the initial determination to

**[\*4]** assess a penalty and (2) petitioners had reasonable cause for the underpayment and acted in good faith.

On the other hand, respondent argues that petitioners are not entitled to the home mortgage interest deduction claimed on their 2016 Form 1040. According to respondent, the foreclosure bid did not cover the principal balance due from petitioners to CenterState Bank, after payment of the first mortgage balance due to Countrywide Home Loans. Accordingly, no interest amount was paid to CenterState Bank at the time of the foreclosure sale. Finally, respondent contends that petitioners are liable for the accuracy-related penalty pursuant to section 6662(a) since an underpayment of tax exists and petitioners have not shown that any exception to the penalty applies in this case.

## II.   *Burden of Proof*

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving them erroneous. Rule 142(a); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). The burden of proof may shift to the Commissioner if the taxpayer establishes that he or she complied with the requirements of section 7491(a) to substantiate items, to maintain required records, and to cooperate fully with the Commissioner's reasonable requests. Petitioners do not contend, nor does the record suggest, that the burden of proof should shift to respondent as to any issue of fact; accordingly, the burden will remain with them.[2] *See* I.R.C. § 7491(a)(1).

## III.   *Relevant Law*

Generally, a taxpayer may claim a deduction for "all interest paid or accrued within the taxable year on indebtedness." I.R.C. § 163(a). Notwithstanding the limitations on deductions for personal interest, *see* I.R.C. § 163(h), home mortgage interest on indebtedness secured by a mortgage on a taxpayer's residence may be deductible as qualified residence interest (QRI), *see* I.R.C. § 163(h)(2)(D). Interest is fully deductible if it meets the statutory requirements. *See* I.R.C. § 163(h)(3).

Interest is deductible only when paid or accrued during the tax year. *See* I.R.C. § 163(a). A cash basis taxpayer can deduct interest only when paid, either by cash payment or its equivalent (including

---

[2] On the basis of the record before us, we are required to consider which party bears the burden of proof in reaching our decision. *Cf. Gibson & Assocs., Inc. v. Commissioner*, 136 T.C. 195, 221 (2011).

**[\*5]** transferring property to the lender in payment). *Helvering v. Price*, 309 U.S. 409 (1940); *Hilsheimer v. Commissioner*, T.C. Memo. 1976-284, 35 T.C.M. (CCH) 1275 (denying an interest deduction to cash basis taxpayer for interest payments that were not made).[3]

IV. *Interest Amount Paid*

There is no dispute whether section 163(h) governs the primary issue for decision in this case. Rather, the parties dispute whether petitioners are entitled to a home mortgage interest deduction based on the amount of QRI paid for the 2016 tax year. To answer this question, we must determine whether petitioners paid interest in the year at issue.

To determine whether a particular payment is appropriately characterized as interest, we begin by considering the fundamental nature of the transaction in question. In many cases—as in this one— the existence of indebtedness is clear and undisputed. When the existence of indebtedness is established, the next hurdle is whether a particular payment is a payment of interest. The Supreme Court has defined interest as a "compensation for the use or forbearance of money." *Deputy v. du Pont*, 308 U.S. 488, 498 (1940).

The general rule in this area is that voluntary partial payments made by a debtor to a creditor are, in the absence of any agreement between the parties, to be applied first to interest and then to principal. *See Lackey v. Commissioner*, T.C. Memo. 1977-213, 36 T.C.M (CCH) 890. However, an exception to this general rule exists in the case of an involuntary foreclosure of mortgaged property where the evidence "strongly indicates" that the mortgagor is insolvent at the time of foreclosure. *See Newhouse v. Commissioner*, 59 T.C. 783, 789 (1973).

Rejecting the interest first rule, we held in *Newhouse* and *Lackey* that no portion of the proceeds from either of the foreclosure sales therein was allocable to interest since the debtors were insolvent. While in *Estate of Bowen v. Commissioner*, 2 T.C. 1 (1943), we applied the proceeds from a foreclosure sale to interest first and then to principal

---

[3] The time in which interest is paid or accrued depends on the taxpayer's method of accounting; here, it is undisputed that petitioners use the cash method of accounting and may deduct interest only when it is actually paid.

**[\*6]** where the debtor was not shown to be insolvent and the payments, in spite of foreclosure, were said to be voluntary.

In this case the payments were not voluntary; however, there is no evidence petitioners were insolvent at the time of the foreclosure. Furthermore, unlike *Lackey* and *Newhouse*, this case involves a clear written agreement—namely the credit agreement—between the lender and petitioners that repayments on the note are applied first to interest. Consequently, we find our decisions in *Lackey* and *Newhouse* to be distinguishable.[4]

Both parties cite *Helvering v. Midland Mut. Life Ins. Co.*, 300 U.S. 216 (1937), and *Blossom v. Commissioner*, 38 B.T.A. 1136 (1938), in support of their arguments. The core dispute in these cases relates to the application of the proceeds from the foreclosure sale of petitioners' home. Respondent does not dispute that the amount realized under the foreclosure proceeding by CenterState was $594,000;[5] rather, respondent contends that petitioners ignore the property's first mortgage of $247,046, resulting in a net difference of $346,954—which is less than the principal balance of $377,060 due to CenterState, and consequently petitioners paid no interest.

We agree, in part, with respondent's argument. While respondent is correct that CenterState did not realize the full $594,000, but rather received only $346,954 after the first mortgage was satisfied, we cannot definitively conclude that CenterState received only the payment of principal from petitioners.

It is undisputed that the principal balance due to CenterState was $377,060; however—as petitioners argued—under the terms of the credit agreement, delinquent payments were to be first applied to

---

[4] Respondent is correct that in *Newhouse* we declined to accept a taxpayer's argument seeking to designate income as interest income to a creditor on a foreclosed property when the debtor was insolvent. *Newhouse*, 59 T.C. at 790. However, in *Newhouse* we recognized that there was no agreement directing the manner of apportionment of the proceeds from a foreclosure sale in the event the total proceeds were insufficient to cover both unpaid principal and accrued interest. *Id*. at 784–85. We find the facts here to be distinguishable since there is no evidence in the record that petitioners were insolvent at the time of the foreclosure.

[5] Petitioners, in their briefing, contend the foreclosure sale of their residence to third parties constituted a taxable sale or exchange, and the amount petitioners realized on the foreclosure sale was $594,000, the amount paid by third parties to CenterState Bank. Respondent did not dispute this argument in his briefing.

**[\*7]** interest due from petitioners, rather than to principal. Therefore, we must analyze the terms of the foreclosure action and its tax implications here.

Per the judgment issued by the circuit court, the total amounts due included principal of $377,060, interest computed to March 8, 2016, of $65,482, appraisal fees of $650, and deferred interest of $26,139. These four amounts total $469,331. At the time of the foreclosure sale, the sum of the accrued and deferred interest on the credit agreement equaled $100,607. Petitioners contend that CenterState, as successor in interest and holder of the promissory note, was contractually bound to apply the foreclosure proceeds first to interest and second to principal. Respondent, however, argues that these payment provisions found in the promissory note are not applicable here in the context of a foreclosure sale.

V.    *Petitioners' Burden of Proof*

As discussed above, income tax deductions and credits are a matter of legislative grace, and the taxpayer generally bears the burden of proving that he is entitled to any deduction or credit claimed. Rule 142(a); *Deputy v. du Pont*, 308 U.S. at 493; *New Colonial Ice Co. v. Helvering*, 292 U.S. 435, 440 (1934).

During briefing petitioners acknowledged that the amount of outstanding interest at the time of the foreclosure action was $100,607, and they argue that the interest portion on their credit agreement to CenterState was paid in full.[6]

The record before us is silent as to how CenterState applied the funds received and whether petitioners owe any remaining principal balance. These facts (if favorable) could support a finding that petitioners in fact paid home mortgage interest (in some amount)—rather than repaying principal balance. However, statements in briefs do not constitute evidence. Rule 143(c); *Evans v. Commissioner*, 48 T.C. 704, 709 (1967), *aff'd per curiam*, 413 F.2d 1047 (9th Cir. 1969); *Chapman v. Commissioner*, T.C. Memo. 1997-147; *Berglund v. Commissioner*, T.C. Memo. 1995-536. Pertinent facts missing from the stipulation merely mean that the party bearing the burden of proof has

---

[6] Petitioners now contend that they are entitled to a QRI deduction of $100,607. It remains entirely unknown how petitioners calculated their original claimed QRI deduction of $103,498.

[*8] failed to sustain the burden of showing them. *See Evans*, 48 T.C. at 709.

Petitioners bear the burden of proof and must show, by a preponderance of the evidence, that they are entitled to a home mortgage interest deduction of $103,498, or some other amount. For the reasons discussed above, we conclude that petitioners have failed to meet their burden. Accordingly, we will sustain respondent's determination to disallow this deduction claimed by petitioners.

VI.     *Section 6662(a) Penalty*

We turn now to respondent's determination that petitioners are liable for the accuracy-related penalty under section 6662(a).

The accuracy-related penalty does not apply to any portion of an underpayment if it is shown that there was reasonable cause for the taxpayer's position and that the taxpayer acted in good faith with respect to that portion. I.R.C. § 6664(c)(1); Treas. Reg. § 1.6664-4(a). The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all the pertinent facts and circumstances, the most important of which is the extent of the taxpayer's effort to assess his or her proper tax liability for the year. Treas. Reg. § 1.6664-4(b)(1). Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of law that is reasonable in the light of all of the facts and circumstances. *Id.*

The taxpayer bears the burden of proof with respect to reasonable cause. *Higbee v. Commissioner*, 116 T.C. 438, 446 (2001). The mere fact that we have held against petitioners on the substantive issue does not, in and of itself, require holding for respondent on the penalty. *See Hitchins v. Commissioner*, 103 T.C. 711, 719-20 (1994) ("Indeed, we have specifically refused to impose . . . [a penalty] where it appeared that the issue was one not previously considered by the Court and the statutory language was not entirely clear.").

We agree with petitioners that they made a reasonable attempt to comply with the Code in circumstances involving a complex issue. We note that respondent has not referred us to, nor have we found, any cases that have directly answered the question before us. Accordingly, in the light of all the facts and circumstances, we find that petitioners acted reasonably and in good faith with respect to the underpayment for

**[\*9]** the 2016 tax year and are not liable for the accuracy-related penalty under section 6662(a).

We have considered all of the arguments that the parties made and to the extent they are not addressed herein, we find the arguments to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*